No. 01-570

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 189

JANICE CHRISTOFFERSON, Individually
and as Personal Representative of the Estate of
RONALD O. CHRISTOFFERSON,

        Plaintiff and Appellant,

    v.

CITY OF GREAT FALLS, a political subdivision
of the State of Montana,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade, Cause No. CDV 99-1379
                The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Norman L. Newhall, Linnell, Newhall, Martin & Schulke, Great Falls,
                Montana

        For Respondent:

                Robert F. James, John D. Alexander, Cathy Lewis, Ugrin, Alexander,
                Zadick & Higgins, Great Falls, Montana

        For Amicus Curia (MTLA)

                John J. Richardson, Beck, Richardson & Amsden, Bozeman, Montana

Heard:  October 29, 2002
Submitted:  December 10, 2002
Decided:  July 25, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Janice Christofferson (Janice) brought this action against the City of Great Falls (City or GF) in the Montana Eighth Judicial District Court to recover damages for personal injury and the wrongful death of her husband, Ron Christofferson (Ron). The jury returned a verdict for the City and the District Court entered judgment on the verdict. Janice appeals from various evidentiary rulings by the District Court and from the judgment. We affirm.

## ISSUES

¶2    Janice presents the following issues on appeal:

¶3    1.    Did the District Court err in permitting the City's expert to render an opinion based on medical articles that were not applicable to the facts of the case?

2.    Did the District Court err in permitting the City's expert to testify from a medical article the existence of which he had previously denied and from articles that had not been disclosed?

3.    Did the District Court err in permitting paramedic, Kendall Neff, to estimate the time lapse from arrival of the ambulance to intubation based on "habit"?

4.    Did the District Court err in refusing to instruct the jury on concurring, independent causes, which was a central theory of Janice's case?

5.    Did the District Court err in refusing to instruct the jury on the burden of proof in the case of a single indivisible injury, which was a central theory of Janice's case?

6.    Did the District Court err in excluding evidence of a cover-up which related to the dispatcher's credibility?

7.    Did the District Court err in excluding testimony of the paramedics regarding the resuscibility of Ron Christofferson at the scene?

8.    Did the District Court err in excluding the testimony of Janice's economist on the value of loss of enjoyment of life?

2

¶4    By way of its cross-appeal, the City questions whether the District Court erred in deciding that hedonic damages are a proper element of damages in a survival action where the decedent survived, but did not consciously experience a loss of enjoyment of life.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5    Shortly after midnight on April 3, 1998, Ron Christofferson, who suffered from asthma, experienced a respiratory arrest and collapsed, unable to breathe. His wife, Janice, called 9-1-1 and reported that her husband was "not breathing." She told the dispatcher that her address was 1909 2nd **Street** South. Rorrie Toren and Pam Bramlett, 9-1-1 dispatchers for the City of Great Falls, took the call and dispatched an ambulance. Bramlett erroneously dispatched the ambulance to 1909 2nd **Avenue** South. Upon arriving at the 2nd Avenue address, the paramedics notified the dispatchers of the mistake. The dispatchers provided the correct address and immediately notified the police of the emergency at the Christofferson's home. A police officer on patrol near the home arrived seven minutes after the original dispatch. Upon arrival, the police officer and Janice performed CPR until the ambulance arrived.

¶6    The paramedics and the ambulance arrived approximately 12.5 minutes after the original dispatch. At the time the paramedics arrived, they were able to discern a weak pulse and observed that Ron was experiencing a slow heart beat, known as a bradycardia heart rhythm. They also recognized that Ron had vomited and aspirated vomitus into his lungs. Paramedic Pat Songer cleared Ron's mouth and airway and intubated him. Paramedic Kendall Neff administered the necessary intravenous drugs and handled the heart monitor.

3

Once Ron was stabilized, the paramedics transported him to the hospital. Ron never recovered consciousness and died approximately two and one-half days later.

¶7 Prior to trial, the City admitted its negligence but denied that its negligence caused Ron's death. A jury trial was held on June 4, 2001. On June 11, 2001, the jury issued a special verdict in which it held that the City's negligence in dispatching the ambulance to the wrong address was not a substantial factor in causing Ron's death. The court subsequently entered judgment in favor of the City. Janice appeals.

**STANDARD OF REVIEW**

¶8 We review a court's rulings on the admissibility of evidence to determine whether the court abused its discretion. *State v. Bingman*, 2002 MT 350, ¶ 19, 313 Mont. 376, ¶ 19, 61 P.3d 153, ¶ 19 (citation omitted). Absent a showing of such abuse we will not overturn a district court's decision. *Bingman*, ¶ 19. Moreover, "the trial court is vested with *great* latitude in ruling on the admissibility of expert testimony." *Baldauf v. Arrow Tank and Engineering*, 1999 MT 81, ¶ 22, 294 Mont. 107, ¶ 22, 979 P.2d 166, ¶ 22 (emphasis in original)(citation omitted).

¶9 A district court has discretion regarding the instructions it gives or refuses to give to a jury and we will not reverse a district court on the basis of its instructions absent an abuse of discretion. *Kiely Const. L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 62, 312 Mont. 52, ¶ 62, 57 P.3d 836, ¶ 62 (citation omitted). In reviewing whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial. *Kiely,*

4

¶ 62. The party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. *Kiely*, ¶ 62. *See also*, *Barnes v. City of Thompson Falls,* 1999 MT 77, ¶ 8, 294 Mont. 76, ¶ 8, 979 P.2d 1275, ¶ 8 (A trial court is imbued with broad discretion to determine whether or not it will give a proposed instruction to the jury. . . .).

## DISCUSSION

¶10     The first two issues we address are whether the District Court erred in permitting the City's expert to 1) render an opinion based on medical articles that were not applicable to the facts of the case, and 2) testify from a medical article the existence of which he had previously denied and from articles that had not been disclosed.

¶11     We begin our analysis of evidentiary rulings pertaining to expert witness testimony with the recognition that the determination of the qualification of an expert witness is a matter largely within the discretion of the trial judge and such a determination will not be disturbed absent an abuse of discretion. *In re Custody of Arneson-Arneson*, 2001 MT 242, 307 Mont. 60, 36 P.3d 874. Additionally, we note that expert opinion testimony is subject to several caveats. Under Rule 702, M.R.Evid., opinion evidence from a qualified expert is admissible if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Such expert testimony requires that a proper foundation be established. Expert testimony must also satisfy the relevancy rules set forth in Article IV of the Montana Rules of Evidence. Moreover, full disclosure during discovery under Rule 26, M.R.Civ.P., is designed "to eliminate surprise and to promote effective cross-examination

5

of expert witnesses." *Hawkins v. Harney*, 2003 MT 58, ¶ 21, 314 Mont. 384, ¶ 21, 66 P.3d 305, ¶ 21 (citation omitted).

¶12     In the case before us, both Janice and GF called medical expert witnesses. The parties presented the necessary foundation to qualify these medical professionals as experts in their field and the court accepted both Drs. Knapp and Watson as experts. Janice maintains that Dr. Knapp, GF's expert witness, based his opinion of Ron's survivability on medical articles that were irrelevant and/or undisclosed prior to trial. She claims that the disclosed articles relied upon by Knapp were written to address incidents of cardiac, rather than respiratory, arrest. As a result of the inapplicability of the articles' conclusions, she contends, Knapp gave irrelevant but prejudicial testimony.

¶13     Our review of the voluminous transcript reveals that Janice's expert, Dr. Watson, provided testimony that directly refuted Knapp's testimony as to the relevancy and applicability of these articles to Ron's condition. Moreover, Janice aggressively cross-examined Knapp.

¶14     For a court to abuse its discretion, it must act arbitrarily, without employment of conscientious judgment, or exceed the bounds of reason resulting in substantial injustice. *Perdue v. Gagnon Farms, Inc.*, 2003 MT 47, ¶ 8, 314 Mont. 303, ¶ 8, 65 P.3d 570, ¶ 8. In the case before us, both parties' expert witnesses presented extensive testimony and both parties were allowed to fully cross-examine the other party's expert. Additionally, the District Court instructed the jury that they were not bound by either expert's opinion and that they were to determine the weight to be given to each expert's testimony based upon the

6

expert's qualifications and credibility. Under these circumstances, we cannot conclude that the District Court abused its discretion.

¶15 Janice further asserts that Knapp gave testimony based on articles that had not been disclosed prior to trial and that, as a result of this "surprise" testimony, she was unprepared to effectively cross-examine Knapp and was therefore further prejudiced. The trial transcript reveals, however, that Janice did cross-examine Knapp on one of the undisclosed articles, during which Knapp admitted he had not previously disclosed the existence of the article. Furthermore, Janice effectively attacked both the relevancy of the article and Knapp's credibility on the basis of the article. As to the second undisclosed article Janice challenges, Janice's expert testified that he was familiar with the article and discredited its relevancy when he explained that articles deriving from cardiac arrest were not pertinent or applicable to Ron's condition. Again, under these circumstances, we cannot conclude that the District Court abused its discretion by permitting Knapp to testify from these articles.

¶16 We next determine whether the District Court erred in permitting paramedic Kendall Neff to estimate the time lapse from arrival of the ambulance to intubation based on "habit." Janice alleges that this testimony was irrelevant, without foundation and clearly prejudicial.

¶17 Two paramedics for the City of Great Falls responded to the 9-1-1 call from Janice-- Kendall Neff and Pat Songer. Upon their admittedly delayed arrival, both experienced paramedics proceeded to assess Ron's condition and begin treating him. The paramedics testified that when two paramedics respond to an emergency call, the required medical duties are divided between them. In Ron's case, Songer intubated Ron while Neff secured the heart

7

monitor and administered intravenous medication. Songer testified generally that after clearing a patient's airway, which was required in Ron's case, it usually takes him less than thirty seconds to intubate. Neff testified that he did not witness Songer intubate Ron, but had no reason to dispute the time it took for Songer to intubate Ron.

¶18 In addition to questioning Neff about Songer's performance at the Christofferson home, GF questioned Neff generally about the manner in which Neff himself performed various emergency paramedic techniques, including how Neff cleared a patient's airway and intubated a patient. Janice claims that Neff testified it would have taken between two and five minutes to intubate Ron after arriving at the residence, and that this testimony undercut the testimony of the paramedic who actually performed Ron's intubation. Our review of the following testimony suggests that this is a slight mischaracterization:


Cross Examination:
GF:    And I would also like you to assume that you have someone who has aspirated and you had to perform suction prior to intubation.

Neff:  Okay.

GF:    And based upon these assumptions, would you agree that from the time you entered the door of the residence until intubation was complete it would take two to five minutes? . . .

Neff:  I would guesstimate it would take right around two minutes to do. But that's with everything else being done, oxygenation, suctioning, bag valve maskings, CPR, yes.

GF:    So you would agree, in fact you told me, didn't you, given these assumptions, that it would take two to five minutes based upon your experience in doing this previously?

Neff:  Yes. With me being the only paramedic out there, yes.

GF:     And we know that it would have taken a little bit longer with [Ron] because someone has to go back to the ambulance and get the battery-operated suction device, don't they?

Neff:  No.  I think actually it would be shorter with [Ron] with two paramedics there. . . .

Re-direct Examination:
Janice: Is that a two-minute estimate, Kendall, based upon one person doing it?

Neff:  Yes.

Janice: Of course, that wasn't the case here, was it?

Neff:  No.

¶19     Janice asserts that the District Court abused its discretion by allowing this testimony. We disagree.  Even assuming that Janice's concerns of relevancy and "habit" foundation have merit, given that the jury had the benefit of Songer's testimony, we conclude that the admission of this testimony does not rise to a reversible abuse of discretion.  "An abuse of discretion in an evidentiary ruling does not necessarily constitute reversible error. . . . 'Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected' (citation omitted).   In other words, 'a reversal cannot be predicated upon an error in admission of evidence, where the evidence in question was not of such character to have affected the result.'"  *In re A.N.*, 2000 MT 35, ¶ 55, 298 Mont. 237, ¶ 55, 995 P.2d 427, ¶ 55.  From the transcript excerpt quoted above, it appears that Neff's testimony did not contradict or undercut Songer's testimony in any significant fashion. Moreover, Janice cross-examined Neff, further establishing for the jury that the extended time for intubation was inapplicable to the instant situation involving two paramedics.  We

9

therefore conclude that Janice has failed to show that her substantial rights were affected by the admission of this testimony.

¶20　We next address whether the District Court erred in refusing to instruct the jury on concurring, independent causes, which was a central theory of Christofferson's case.

¶21　Both parties submitted proposed jury instructions for the court's approval and presentation to the jury. The transcript contains several pages of jury instruction discussions, held outside of the presence of the jury, that took place over multiple days. In one such discussion, Janice offered several alternate jury instructions addressing the concept of concurring, independent causes of Ron's death. Specifically, her proposed jury instruction No. 10 read:

> Except as stated in sub-section (2), the City of Great Falls' negligent conduct is not a substantial factor in bringing about harm to Ron Christofferson or Jan Christofferson if the harm would have been sustained even if the City of Great Falls had not been negligent.
>
> (2) If two forces are actively operating, one because of the City of Great Falls' negligence, the other not because of any misconduct on the City of Great Falls' part, and each of itself is sufficient to bring about the injury to Ron Christofferson or Jan Christofferson, then the City of Great Falls' negligence may be found to be a substantial factor in bringing the injury about.

¶22　GF challenged this jury instruction, arguing that it was inapplicable and inappropriate under the facts of this case. GF asserted that the language in sub-section (2) of the proposed instruction requires that each force, of the two actively operating forces, had to be independently sufficient to bring about Ron's death. GF maintained that but for Ron's pre-existing illness causing a respiratory arrest, the delay of the ambulance did not matter. In

10

other words, without the respiratory arrest, the delay of the ambulance could not have caused any harm; therefore the ambulance delay, by itself, was not sufficient to cause Ron's death.

¶23  Following several minutes of discussion on this particular proposed instruction, the court asked Janice's attorney to respond, at which point, the following conversation occurred:

Janice:  Know what, Judge, everyone has convinced me.  I'm going to withdraw.

Court:  You are?

Janice:  Yeah.

Court:  What are you withdrawing?

Janice:  Well, 10 --

Court:  Let me just get my list.  10.

Janice:  11, 12.

(Instructions 11 and 12 were simply variations on the theme of Instruction No. 10).

¶24  On appeal, Janice argues that 1) she has no recollection of withdrawing Proposed Instruction No. 10; 2) she thought its offer had been denied; 3) the court reporter's punctuation made it appear that it had been withdrawn; and 4) if such a withdrawal did occur, it was inadvertent.  GF argues on appeal that Janice withdrew the proposed instruction and should not now be allowed to claim she did not.  In the alternative, GF argues that, even if not withdrawn, the proposed instruction was still inapplicable and the instruction issued by the District Court was a correct statement of the law.

¶25  The record reflects that Janice did in fact withdraw her Proposed Instruction No. 10. However, even if we assume for the sake of argument that she did not, we cannot read

11

section (2) of the proposed instruction as Janice wants us to do. The plain language of the instruction compels us to conclude that GF's interpretation is correct. Each of the two forces addressed in this section must, by definition, be "of itself . . . sufficient" to bring about the harm to Ron. The delay in the arrival of the ambulance, standing alone, would not be sufficient to harm Ron--indeed, the ambulance would not have been needed at all but for Ron's respiratory arrest. Therefore, the instruction simply does not fit the facts before the jury.

¶26     The District Court did instruct the jury as follows:

> City of Great Falls is liable if its negligence was a cause of injury or death to Ron Christofferson or a cause of injury to Jan Christofferson.

> The City of Great Falls' conduct is a cause of Ron Christofferson's injury or death or a cause of injury to Jan Christofferson if it is a substantial factor in bringing the injury or death about.

We conclude that, given the facts of this case, this was a correct statement of the law. As noted above, we will not reverse if the jury instructions in their entirety state the applicable law of the case. *Kiely,* ¶ 62.

¶27     The next issue before us is whether the District Court erred in refusing to instruct on the burden of proof in the case of a single indivisible injury, which was a central theory of Christofferson's case.

¶28     Janice argues that the District Court abused its discretion when it refused to give two jury instructions shifting the burden of proof from her to GF upon her prima facie showing that GF's negligence was a substantial factor in causing harm to Ron. As we indicated

12

above, a district court has broad discretion regarding the instructions it gives or refuses to give to a jury and we will not reverse a court on the basis of its instructions absent an abuse of discretion. *Kiely*, ¶ 62. Moreover, an abuse of discretion is not reversible error absent prejudice. *In re A.N.*, ¶ 55.

¶29 The requested and denied jury instructions were as follows:

> Proposed Instruction No. 14
> If you find that the negligence of City of Great Falls was a substantial factor in bringing about the injury or death to Ron Christofferson, and if you find that such negligence has contributed to the confused situation that makes it difficult to prove whether the injury or death were caused by City of Great Falls' negligence or by Ron Christofferson's preexisting condition, then the City of Great Falls is liable for the entire amount of damages.

> Proposed Instruction No. 15
> Where a preexisting condition exists which has been aggravated by another's negligence, it is your duty, if possible, to apportion the damage between that caused by the preexisting condition and that cause by the negligence. But if you find that the evidence does not permit such an apportionment, then the City of Great Falls is liable for the entire amount of the damage.

These instructions went to damages and were dependent upon the jury first finding that GF's negligence was a substantial factor in Ron's injury and death. Because the jury found that GF's negligence was **not** a substantial factor in Ron's death, the court's refusal to give the jury instructions did not prejudice Janice. *See Stenberg v. Neel* (1980), 188 Mont. 333, 339, 613 P.2d 1007, 1011 (reversible error cannot be predicated on damage instructions when the jury's verdict is such that the jury does not reach the issue of damages). We therefore affirm the District Court on this issue.

13

¶30 We next address whether the District Court erred in excluding evidence of a cover-up which related to the dispatcher's credibility.

¶31 Dispatcher Rorrie Toren took Janice's 9-1-1 call the night her husband fell ill. He testified that he correctly relayed the address to Dispatcher Pam Bramlett but Bramlett inadvertently conveyed the wrong address to emergency responders. Toren, who was the shift supervisor that night, testified in the presence of the jury that he did not report this error to his supervisor, did not prepare a written report of the error, and did not preserve the tape of the 9-1-1 call.

¶32 Janice testified that she did not learn the reason for the ambulance's delay until several months after Ron's death. She now alleges that the City engaged in a "cover-up" of this event. She argues that the District Court abused its discretion when it granted a motion *in limine*, following Toren's above-described testimony, prohibiting her from "eliciting any testimony or arguing to the jury that the City, following the dispatch of the ambulance to the wrong address, made no report, made no report to the supervisor, that [Toren's supervisor] took no action, or that no action was taken against Pam Bramlett, who was the individual that made the wrong dispatch."

¶33 In support of its motion *in limine*, GF argued that such testimony was irrelevant. It maintained that the purpose of this case was to determine whether GF's admitted negligence in dispatching the ambulance to the wrong address caused Ron's death, and that a dispatcher's failure to generate a report of the error after it occurred was irrelevant to causation. Moreover, GF argued that such testimony was inflammatory and designed to

14

imply that the City did not care enough about Janice or Ron Christofferson to generate a report of their error. Janice countered that such testimony went to Toren's credibility and, therefore, was relevant under Rule 401, M.R.Evid.

¶34 Without explaining its decision, the District Court granted the City's motion *in limine*. Upon review of the transcript and the parties' arguments, we fail to see the relevancy of the "cover-up" testimony. Relevant evidence is defined at Rule 401, M.R.Evid., as that ". . . having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Given that GF admitted its negligence, Toren's failure to report the address snafu to his supervisor does not make the City's negligence or liability for Ron's death any more or less probable. More to the point, given the admission of negligence, we cannot conclude that the credibility of the dispatcher, even if damaged by the revelation, would have any bearing on the case, nor has Janice informed us how the impairment of his credibility would matter. Therefore, we cannot conclude that the District Court's ruling on the motion *in limine* was an abuse of discretion.

¶35 The seventh issue before us is whether the District Court erred in excluding the testimony of the paramedics regarding the resuscibility of Ron Christofferson at the scene.

¶36 In their depositions, both Neff and Songer testified that had they been correctly dispatched, they would have arrived at the Christofferson home and begun resuscibility procedures on Ron several minutes earlier, thus enhancing his chances of survival. Prior to trial, GF moved *in limine* to exclude this testimony. The City argued that Ron's prospects

of survival are properly a subject for expert testimony and that such testimony by Neff and Songer lacked foundation and was speculative. Janice, on the other hand, argued that the paramedics were entitled to testify to these matters as lay witnesses under Rule 701, M.R.Evid.

¶37 Rule 701, M.R.Evid., provides:

**Opinion testimony by lay witnesses**.
If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

¶38 Rule 702, M.R.Evid., on the other hand, addresses expert testimony:

**Testimony by experts.**
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

¶39 In the case before us, we must decide whether the District Court abused its discretion when it determined that the paramedics would be precluded from offering essentially lay medical opinions.

¶40 There can be little question that an opinion to the effect that the ambulance's delay greatly reduced Ron's resuscibility chances is relevant to the primary issue of the case, and thereby satisfies Rule 701(b), M.R.Evid. The question, therefore, is whether such an opinion may be given by a lay witness, or must be presented only by an expert witness.

16

¶41    Janice argues that *Onstad v. Payless Shoesource*, 2000 MT 230, 301 Mont. 259,  9 P.3d 38, and *Hislop v. Cady* (1993), 261 Mont. 243, 862 P.2d 388, support her position, while GF argues that these cases are distinguishable.

¶42    In *Onstad*, a Payless Shoesource employee was physically and sexually assaulted by a stranger who had previously "flashed" other female employees at the same store and at another Payless store location.  Onstad sued Payless, alleging it was negligent in not warning her based on these prior incidents, and in not providing her with a safe and secure workplace. Onstad presented the testimony of three police officers who investigated the assault.  Payless challenged the officers' opinions as to the efficacy of security precautions taken in the particular Payless store, and the predictability of an escalation in severity of a sexual offender's actions.  Payless claimed that such testimony was inadmissible lay testimony. *Onstad*, ¶ 36.

¶43    Payless argued that under *Massman v. City of Helena* (1989), 237 Mont. 234, 773 P.2d 1206, and  *Rocky Mountain Ent. v. Pierce Flooring* (1997), 286 Mont. 282, 951 P.2d 1326, lay witnesses may not give opinions on topics requiring specialized skill or training. In *Massman*, an assistant fire chief was questioned about the effect of certain firefighting methods used to contain the fire at issue.  The trial court denied introduction of the testimony, ruling that such testimony constituted expert testimony, not lay witness testimony. This Court affirmed the trial court, stating:

> His opinion, about the most effective methods for combating such a fire, was
> based on that specialized, technical knowledge obtained from his fire training

and work as an assistant fire chief. As such, the substance of his opinion constituted an expert opinion rather than a lay witness opinion.

¶44 In *Rocky Mountain*, the District Court precluded the testimony of a business owner who, after being forced to close his business, attempted to testify as a lay witness as to his business' future lost profits. The District Court held that projecting lost profits required the skills of an expert, and that the company owner had produced no evidence of having the specialized skill and training of an economist. *Rocky Mountain*, 286 Mont. at 292, 951 P.2d at 1332. We affirmed the District Court.

¶45 The trial court in *Onstad*, after weighing the arguments presented by both parties, ultimately concluded that the officers' lay testimony was admissible, noting that it "sprang from their work and experience as police officers." *Onstad*, ¶ 41. One officer testified that it was "common knowledge" that employee safety increases when two employees are present rather than just one. *Onstad*, ¶ 41. The other officers testified that a police officer would not have advised a crime victim that the assaulter's previous "flashing" incidents indicated he was merely a "harmless pervert," as alleged by Payless. *Onstad*, ¶ 41. Lastly, the District Court found significance in the fact that Payless had raised the matters at issue in its opening statement, thus opening the door. *Onstad*, ¶ 42. Payless appealed and this Court affirmed the trial court. We observed that the District Court had responded to Payless' objections in a "careful and considered fashion" and had correctly attributed significance to Payless' raising of the issue in its opening statement. As a result, this Court concluded that the trial court did not abuse its discretion in admitting the lay testimony. *Onstad*, ¶ 42.

18

¶46 Janice also relies on *Hislop,* in which a police officer testified at trial that the cause of an accident in which a pedestrian was killed was the fact that he was wearing dark clothes and standing in the highway in the middle of the night, and therefore not visible to oncoming traffic. On appeal, relying on *Hart-Anderson v. Hauck* (1989), 239 Mont. 444, 781 P.2d 1116, we held that based upon the officer's "extensive experience in investigation," he was "properly qualified through training and experience to testify as to his opinion regarding the cause of the accident." *Hislop*, 261 Mont. at 249, 862 P.2d at 392. In *Hart-Anderson*, we similarly concluded that an officer's testimony regarding the cause of an automobile accident was admissible based upon the officer's extensive experience as an investigator of "several hundred automobile accidents." *Hart-Anderson*, 239 Mont. at 448-49, 781 P.2d at 1118-19.

¶47 While we did not expressly state in either *Hislop* or *Hart-Anderson* that the officers' testimony was properly admitted as expert testimony under Rule 702, as opposed to lay testimony under Rule 701, the language of those cases certainly supports that inference. Then, in 1997, we confirmed that such opinion testimony as to causation from a police officer constitutes expert testimony, affirming the district court's conclusion that, given the officer's extensive experience and training, she qualified as an expert under Rule 702, M.R.Evid. *State v. Gregoroff* (1997), 287 Mont. 1, 951 P.2d 578. We clarified that a law enforcement officer may offer an expert opinion about the cause of an accident, as long as a sufficient foundation for the opinion is offered under Rule 702.

¶48 More recently, in *State v. Nobach*, 2002 MT 91, 309 Mont. 342, 46 P.3d 618, we held that whether a defendant's ability to drive safely was diminished as a result of his

consumption of drugs required expert opinion testimony. *Nobach*, ¶ 22. We rejected the police officer's lay opinion to the effect that the defendant had been impaired by drug consumption, and concluded that the district court had abused its discretion in admitting his *lay* testimony on this issue. We stated:

> Moreover, we are not persuaded that lay people are sufficiently knowledgeable about common symptoms of drug consumption, much less the effects of drug consumption on a person's ability to drive a motor vehicle safely, to offer lay opinion testimony on those subjects, based on personal observations, under Rule 701. In addition, [the officer's] opinions that Nobach's ability to drive safely was diminished by the consumption of drugs and as to the effect of two depressants purportedly were based on his training and experience, subjects which generally relate to expert opinion testimony. *See* Rule 702, M.R.Evid.

*Nobach*, ¶ 17. Significantly, we further concluded that there was insufficient foundation for the acceptance of the officer's opinion as to drug impairment, because he did not have the training necessary to testify as to the effects of particular drug consumption. Thus, the opinion would not qualify as an expert opinion under Rule 702, and it was therefore error for the district court to admit the evidence. *Nobach*, ¶ 26.

¶49 Here, plaintiffs argue that the paramedics should have been permitted to offer *lay* testimony as to the prospects of success of an earlier intubation of Ron, had the ambulance been properly dispatched. Such proposed testimony clearly extends beyond the mens' observations at the scene or a description of their actions, and into the realm of expert medical opinion. While in *Onstad*, the officers were not offering scientific opinions, here the paramedics were being called upon to do just that. Our case law clearly requires that a foundation establishing the expertise of a witness to give such opinions must first be laid,

20

pursuant to Rule 702. We conclude that the opinions Neff and Songer gave as to the likelihood of resuscibility had they arrived earlier could not be based on common knowledge, general experience or scene observation, but rather required extensive specialized training and experience. As a result, their testimony fell within the realm of expert testimony requiring foundation, and preclusion of it as lay opinion was not an abuse of discretion.

¶50 The last issues we address concern damages. Janice maintains the District Court erred in excluding the testimony of Christofferson's economist on the value of loss of enjoyment of life. GF argues on cross-appeal that the District Court erred in deciding that hedonic damages are a proper element of damages in a survival action where the decedent survived, but did not consciously experience a loss of enjoyment of life.

¶51 These final issues relate to the damages that would have been awarded to Janice had the jury determined that GF's negligence was a substantial factor in Ron's death. Because the jury did not make such a determination, these issues are moot.

### CONCLUSION

¶52 Having concluded that the District Court did not abuse its discretion in deciding the foregoing issues, we affirm the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE

Justice Jim Rice specially concurring.

¶53 I concur with the Court's opinion. However, though I agree with the Court's resolution of Issue 2, I do not condone in any way the actions of the City in regard to the testimony of its expert witness, Dr. Joseph Knapp.

¶54 In his deposition, Knapp testified that he was not aware of "any studies" that pertained exclusively to the survival rate for someone who had suffered a pre-hospital respiratory arrest. However, on cross-examination at trial, when asked the identical question, Knapp testified that he was aware of such studies "only in children." Knapp had neither corrected his previous deposition testimony nor supplemented his other discovery responses and expert disclosure.

¶55 Plaintiff's counsel allowed this discrepancy to pass during the remainder of his cross-examination, but objected when defense counsel questioned Knapp about the children's studies on re-direct examination. Defense counsel responded by arguing that Plaintiff's counsel had "opened the door" by his single question about existing studies–the question which Knapp had answered differently in his deposition. The District Court overruled Plaintiff's objection, and defense counsel then extensively questioned Knapp concerning the studies and, further, referenced the studies in closing argument.

¶56 I find that the City's tactics were unfair, that Plaintiff was ambushed by Knapp's inconsistent testimony, and it should not have been admitted. However, the Court essentially concludes, and I agree, that no prejudice accrued to Plaintiff by the error, primarily because of Plaintiff's counsel's astute cross-examination of Knapp and his effective countering of Knapp's opinion. For the simple reason that I cannot conclude that the outcome of a trial

23

saturated with conflicting expert testimony was affected by this evidentiary error, I concur

in the decision to affirm on this issue.


/S/ JIM RICE

Justice James C. Nelson dissents.

¶57    I respectfully dissent.  Believing that instructional error mandates a new trial, my dissent focuses only on Issue 4, the refused causation jury instruction discussed at ¶¶ 20-26 of the Court's Opinion.

¶58    First, as a preliminary matter, I believe Janice properly preserved this issue for appeal. The majority holds at ¶ 25 that Janice withdrew Proposed Instruction No. 10 as indicated by the transcript and the docket hearing entry of June 8, 2001.  However, the transcript discussion after Janice's supposed withdrawal clearly indicates Janice wished to preserve the issue for appeal because her attorney continued to discuss and emphasize the application of the multiple cause theory to Janice's case.  Therefore, although it appears from the record that Janice's attorney inadvertently withdrew Proposed Instruction No. 10, his substantive argument makes clear that he wished to preserve this issue for appeal.  The majority implicitly concedes this point by stating at ¶ 25 "even if we assume for the sake of argument that [Janice preserved the issue for appeal]."  Further, by actually addressing the refusal of the jury instruction, the majority is unclear whether or not the rest of ¶¶ 25 and 26 is dicta.

¶59    Turning to the merits of whether the causation jury instruction offered by Janice should have been given, I believe Janice raises an important issue this Court has not previously addressed and that must be addressed on the facts of this case.  According to the record, the parties to this case agreed that duty, breach, and the existence of damages were undisputed.  Therefore, the only liability issue submitted to the jury in this case was causation: whether or not the City of Great Falls' negligence caused Ron's death.  The

25

disputed instruction offered by Janice was directly addressed to the issue of causation and, as the majority notes at ¶ 20 in its framing of the issue, the instruction was central to the theory of Janice's case.

¶60 In order to determine whether refusal to give the instruction was an error, some background on the purpose and structure of cause-in-fact tests is appropriate.[1] Normally, causation is determined by the "but for" test. In other words, a defendant is not liable unless the damages suffered by the plaintiff would not have occurred "but for" the defendant's negligent breach of duty. When there are joint or concurrent negligent causes of a victim's harm, but none of the acts standing alone would have been sufficient to cause the harm, the but for test is used because the victim would still not have suffered the harm but for each cause with the combined conduct viewed as a whole. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS, § 41 p. 268 (5th ed. 1984) (hereinafter KEETON). However, the burden shifts to the defendants to prove proportional responsibility once the plaintiff proves that each defendant was a possible negligent cause. KEETON, § 41 p. 270-72.

¶61 In contrast, when two or more causes could have each *independently* brought about a plaintiff's damages, the "but for" test is inadequate because it allows a negligent defendant to escape liability, i.e., "but for" the defendant's negligence, the plaintiff might still have suffered the same damages because of the other cause. As a result of this failing, the "substantial factor" test has developed to allow a finding of causation when a defendant's

---

[1]This dissent is only focused on causation in fact. It does not address issues of legal cause, also called proximate cause, as that is not at issue (and is only at issue in intervening cause cases). *See Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 916 P.2d 122.

26

negligence was a "substantial factor" in causing the plaintiff's harm. KEETON, § 41 p. 266-67. This test allows a jury to find causation, and therefore liability, when any one of the possible causes alone would have been sufficient to cause the injury. The example typically used to illustrate this scenario is a fire with two possible causes. A lightening bolt and sparks from a train each ignite different foliage and join to become a fire destroying the victim's property. Using the "substantial factor" test rather than the "but for" test to judge causation allows a jury to find the railroad's negligent maintenance of foliage caused the victim's damages even though the lightening bolt may have caused the same damage anyway--i.e., the railroad's negligence alone could have caused the same damages. KEETON, § 41 p. 266-67; *Anderson v. Minneapolis, St. P. & S. S. M. Ry. Co.* (Minn. 1920), 179 N.W. 45, 46-48.

¶62     In sum, when discussing the causation in fact aspects of a claim, the terms "but for" and "substantial factor" are used as terms of art to indicate the basic type of situation involved and the contrasting causation in fact tests.

¶63     In this case, the parties agree that Montana has adopted both of these causation tests, as is reflected in the Montana Pattern Jury Instructions (MPI). *See* MPI 2.06A and 2.06B. Further, the City agreed to a substantial factor instruction under the facts of this case because Ron could have died either from his illness or from the City's negligence. And, as the majority notes, the District Court gave a "substantial factor" instruction. However, the issue Janice raises is not whether a substantial factor instruction should have been given instead of a but for instruction. Rather, the issue Janice raises is whether or not specific wording in

27

a "substantial factor" instruction must be given in order to properly explain to the jury what can constitute a "substantial factor." This issue has never been addressed by this Court.

¶64 In support of her argument, Janice and amicus Montana Trial Lawyers Association (MTLA) assert the jury should have been given an instruction patterned after Restatement (Second) of Torts § 432 (1965). Based on this section and Montana's case law dealing with "substantial factor," Janice points to a critical error implied by this Court in *Rudeck v. Wright* (1985), 218 Mont. 41, 709 P.2d 621, then made explicit in *Kyriss v. State* (1985), 218 Mont. 162, 707 P.2d 5, and, finally, carried through in numerous cases since. *See ¶ 12 infra* (citing cases).

¶65 In *Rudeck*, Montana was first presented with a case demonstrating the "but for" test for causation does not properly address every situation. After discussing the inadequacies of the "but for" test under the facts of that case, the Court properly concluded the substantial factor test was appropriate. *Rudeck*, 218 Mont. at 52-54, 709 P.2d at 628-29. However, in adopting the substantial factor test, the Court erroneously adopted a jury instruction which used the language of Restatement (Second) of Torts § 431 (1965), which is actually not the Restatement's version of the substantial factor test. Further, the Court made this conclusion regarding the substantial factor test even though the briefs of the parties indicate that what was really at issue was whether or not a proximate cause instruction should have been given because of alleged intervening causes.[2] Then, to compound the error, this Court in *Kyriss*

[2]In *Rudeck* the defendant doctor Wright who left a lap mat in Rudeck during surgery alleged intervening negligence by the hospital nurses for failure to count surgical sponges and by another doctor for failure to see the lap mat in Rudeck's abdomen on a subsequent X-ray. However, after joining the nurses and doctor through cross claims, Wright also

28

explicitly stated that the language of § 431 was the proper language for a substantial factor instruction. *Kyriss*, 218 Mont. at 168, 707 P.2d at 8.

¶66 By incorrectly adopting the language of § 431, the Court set the stage for the error at issue in this case. As mentioned, § 431 of the Restatement is NOT the Restatement's articulation of the "substantial factor" test. Indeed, the Restatement does not even use "but for" and "substantial factor" as terms of art. *See Callahan v. Cardinal Glennon Hosp.* (Mo. 1993), 863 S.W.2d 852, 860-63 (fully explaining the difference between the Restatement's terms of art and Keeton's terms of art). Rather, the Restatement uses the phrase "substantial factor" in § 431 simply as its explanation that causation is a required element of a claim in tort.[3] Section 431 reads: "The actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm." *Cf.* MPI 2.06B. The Restatement then goes on to articulate its versions of the "but for" test and the substantial factor test in the next section, § 432. The "but for" test is in § 432(1): "Except as stated in subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been

---

moved to sever the case into three separate trials; one regarding his negligence to the victim, one regarding the nurses' negligence and one regarding the other doctor's negligence. When Wright then sought a proximate cause instruction to address the intervening negligence of the severed parties, the trial court refused such an instruction because it had granted his motion to sever. This Court then affirmed holding that the nurses' negligence was concurrent and the other doctor's negligence was foreseeable. However, in discussing the jury instructions this Court contrasted the substantial factor instruction against a but for instruction rather than the proximate cause instruction put at issue by Wright. *Rudeck*, 218 Mont. at 44-46, 50-54, 709 P.2d at 623-24, 627-29.

[3]Again, this dissent assumes proximate cause is not at issue.

negligent." The "substantial factor" test is in § 432(2): "If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about."

¶67     As the language of these two sections shows, the but for test and the substantial factor test have specific, but different, requirements. Further, the substantial factor test is used when two or more forces could each independently bring about the harm. By relying on the language of § 431 rather than § 432(2) and by failing to address the Restatement's use of the term "substantial factor," the opinions in *Rudeck* and *Kyriss* fail to address the critical distinction between the "but for" test and the "substantial factor" test, even though both opinions adopted the substantial factor test.

¶68     Further, our later cases relying on *Rudeck* and *Kyriss* exacerbate the problem by allowing the substantial factor test to be applied anytime there is more than one cause, rather than only when there are multiple causes which *independently* could have brought about the result. *Compare White v. Murdock* (1994), 265 Mont. 386, 392, 877 P.2d 474, 478 ("each of several acts, *alone*, could have caused the damages")(emphasis added); *Bickler v. Racquet Club Heights Assocs.* (1993), 258 Mont. 19, 23, 850 P.2d 967, 970 ("because the conduct of one or more others *would have been sufficient* to produce the same result")(emphasis added); *Kitchen Krafters, Inc. v. Eastside Bank* (1990), 242 Mont. 155, 167, 789 P.2d 567, 574 ("If two causes concur to bring about an event, and either one of them, alone, would have been sufficient to cause the identical result, some other test is needed. In response to

30

this problem, the courts have developed the 'substantial factor test.'"); *Young v. Flathead County* (1988), 232 Mont. 274, 282, 757 P.2d 772, 777; and *Juedeman v. Montana Deaconess Med. Ctr.* (1986), 223 Mont. 311, 318, 726 P.2d 301, 305; *with Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 364, 916 P.2d 122, 135 ("if two or more causes concur to bring about an event, then cause-in-fact is established by the 'substantial factor' test"); *Roe v. Kornder-Owen* (1997), 282 Mont. 287, 293, 937 P.2d 39, 43 ("when multiple causes of an event are alleged, the test of causation is whether the conduct in question was a substantial factor in bringing about the event").[4]

¶69    Despite the lack of precision in the above Montana cases regarding the substantial factor test, other states have dealt with these causation issues by simply ignoring the distinction between the "but for" and "substantial factor" tests altogether. For example, California uses the substantial factor instruction, i.e., the general instruction articulated by Restatement § 431, for all cases no matter what the type. *See* 1 BAJI, CALIFORNIA JURY INSTRUCTIONS, 3.76, 3.77 (9th ed. 2002); *see also Callahan*, 863 S.W.2d at 863 (Missouri uses "direct" causation language for all cases).

¶70    For whatever merit there may be in the straightforward approach of using one test, at this point in time Montana endorses both a but for test and a substantial factor test. If we are to continue to use both tests, I would address the distinction between the two as

_____

[4]Our opinion in *Busta*, 276 Mont. at 357-73, 916 P.2d at 131-41, was primarily addressed to the issue of proximate cause. However, while *Busta* clarifies previous case law with respect to proximate cause, it does not address the disparity in previous case law regarding causation in fact. Therefore *Busta* represents proper authority with respect to proximate cause in the cases cited in ¶ 12, but it does not clarify the variations in cause in fact instructions in those cases.

articulated by the Restatement and Keeton and hold that the substantial factor test is allowed only when two causes could each *independently* bring about the eventual harm. Further, I would hold that our current substantial factor instruction as articulated in MPI 2.06B is inadequate because it does not define "substantial factor" for the jury as an independent cause. While I believe the language of § 432(2) is a correct statement of the substantial factor test, I believe other similar language would also suffice, i.e., "if this possible cause alone would have been sufficient to cause the injury, it may be a substantial factor."

¶71    Turning to the facts of this case, Janice argues that a substantial factor instruction patterned after § 432(2)[5] was necessary because Ron might have died solely from the City's negligence rather than from his preexisting condition. Because the intubation successfully restored oxygen to Ron's blood and because Ron did not suffer any further oxygen deprivation due to his own symptoms before his death, Janice asserts the City's negligence in failing to arrive at the scene earlier was the sole cause of Ron's death. Accordingly, Janice asserts the City's negligence could have independently caused Ron's death even though his preexisting condition might also have caused it.[6] Janice asserts that the jury did

---

[5]Janice and MTLA assert that § 432 in its entirety, including subsection (1) and subsection (2), should have been given to the jury. *See* ¶ 21 of the majority Opinion. At the same time, MPI 2.06A and 2.06B note that it is error for a District Court to give both a but for and a substantial factor instruction because the two tests are mutually exclusive alternatives. For purposes of this dissent, I assume Janice asserts only that § 432(2) should have been given to the jury. However, I note here that if language similar to § 432 is used so that it is clear to the jury that only one of two possible tests can apply, (i.e., subsection (1) applies in every case except where subsection (2) can apply), I would not hold it error to give both tests as instruction.

[6]As the parties apparently agreed, the but for test is inadequate here because Ron's preexisting condition might have been the cause as well as the City's negligence. In other

32

not understand it could find the City's negligence a cause even though Ron's preexisting condition was also a possible cause.

¶72 As the facts of this case indicate, where there is a preexisting condition combined with subsequent medical negligence, it is difficult to view the subsequent negligence as a purely independent cause for the reason that medical care is not sought unless there is some already existing problem that could end in harm. For example, in this case, the dispatcher's admitted negligence would not have even occurred if not for Ron's preexisting condition-- i.e., Janice would not have needed to call for help except that Ron was in respiratory arrest.

¶73 The Restatement annotations to § 432 indicate that courts have generally endorsed the use of a substantial factor test for causation in these sorts of cases. *See Bromme v. Pavitt* (Cal. Ct. App. 1992), 7 Cal.Rptr.2d 608, 614 (because death could have been caused by preexisting cancer or failure to diagnose it, substantial factor test applies and plaintiff had to establish "reasonable medical probability" that the negligence was sufficient of itself to bring about the death, i.e., the death was "more likely than not" the result of the negligence); *Hilden v. Ball* (Idaho 1989), 787 P.2d 1122, 1143 (the substantial factor instruction applies to medical negligence case, but it was harmless error to give a "but for" instruction when only one doctor's negligent failure to administer oxygen before surgery was at issue).

words, while one could ask the jury "but for the City's negligence, would Ron have been saved," the jury could conclude under this formulation that but for the City's negligence, Ron might have died anyway.

However, it appears that while the case law endorses a "substantial factor" test, many of the cases go on to use the general § 431 test rather than the specific test in § 432(2).

¶74 Further, various discussions also indicate that these types of cases are better addressed using a loss of chance type instruction because such an instruction logically follows the fact scenario involving a preexisting condition. *See, e.g., Kyriss*, 218 Mont. at 166, 707 P.2d at 7 (instruction given that "If you find that any negligent medical practice on the part of the Defendants substantially reduced the chances for saving Plaintiff's leg, then such a reduction in chance can be a part of the legal cause as defined in this instruction."); *Aasheim v. Humberger* (1985), 215 Mont. 127, 695 P.2d 824 (adopting loss of chance instructions, citing Joseph H. King, Jr. *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 YALE L.J. 1353, 1363 (1981) and discussing the causation difficulties presented by such cases); *Hamil v. Bashline* (Pa. 1978), 392 A.2d 1280 (discussing application of Restatement § 323 to loss of chance situation where hospital failed to have operable EKG and victim died of heart attack); *Battista v. Olson* (N.J. Super. Ct. 1986), 516 A.2d 1117, 1125 (substantial factor test applied and plaintiff had to prove "defendants' negligent conduct negated a substantial possibility that prompt rescue efforts would have been successful, thereby constituting a substantial factor in causing decedent's death" in case over police failure to summon medical aid); KEETON, § 41 Supp. p. 44-45 (discussing how causation and burden of proof are confused in loss of chance cases). Further, loss of chance instructions allow for recovery by the plaintiff victim even when the plaintiff cannot meet the more likely than not burden of proof

34

that the medical negligence caused the death. *See Aasheim*, 215 Mont. at 131-33, 695 P.2d at 827-28. Like the substantial factor test, the ultimate purpose of loss of chance instructions is to provide a causation test that will not allow defendants to unfairly escape liability. However, since a loss of chance instruction was not presented for review on appeal and is not included in the record of this case, that type of instruction is not at issue here.

¶75    As to the issue of whether a proper substantial factor type instruction was given, I conclude that the District Court erred. Under the applicable standard of review, as cited by the majority at ¶ 9, Janice must demonstrate prejudice by showing that the jury instructions in their entirety did not state the applicable law of the case. The majority's statement at ¶ 25 that "[t]he delay in the arrival of the ambulance, standing alone, would not be sufficient to harm Ron," ignores that the delay might in fact have been the cause of Ron's death. I would hold that because Montana currently distinguishes between the but for test and the substantial factor test and because § 432(2) properly articulates the substantial factor test, the jury was not given instruction that properly defined the substantial factor test. Consequently, the jury instructions in their entirety did not state the applicable law of the case. Because causation was the only issue submitted to the jury, the instructions were critical to proper jury deliberations. Therefore, I would hold that this case must be reversed and remanded for a new trial with proper instructions.

¶76    I dissent.

/S/ JAMES C. NELSON