NO.    93-296

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STELLA HISLOP, personal representative
of the estate of COLIN B. HISLOP,

      Plaintiff, Appellant,
      and Cross-Respondent,

  -vs.-

RICHARD C. CADY,

      Defendant, Respondent,
      and Cross-Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Russell K. Jones, Spokane, Washington

      For Respondent:

          Kenneth E. O'Brien, Hash, O'Brien & Bartlett,
          Kalispell, Montana

FILED

Submitted on Briefs:    September 16, 1993

Decided:    October 21, 1993

Filed:    OCT 21 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Stella Hislop (Hislop) appeals from a judgment entered upon a jury verdict in the Eleventh Judicial District Court, Flathead County, in favor of Richard C. Cady (Cady). Cady appeals the District Court's denial of a motion for summary judgment, a pre-trial motion for a ruling that decedent's heirs were not entitled to damages, and certain jury instructions. We affirm.

Because we affirm, the issues raised by Cady on his cross-appeal are moot. Therefore, we state the issues on appeal as follows:

1. Did the District Court err in failing to instruct the jury that Cady was negligent per se?

2. Did the District Court err in allowing the investigating police officer to testify that Cady did not receive a citation?

3. Did the District Court err in allowing the investigating police officer to testify as to his opinion regarding the cause of the accident?

4. Did the District Court err in allowing testimony that the decedent was in a bar prior to his death?

On July 5, 1989, at approximately 9:30 p.m., the decedent Colin Hislop (Colin) met his brother, James Hislop (Jim), at the Packer's Roost, a restaurant and lounge/casino on U.S. Highway 2 near Coram, Montana. Between 11:00 and 11:30 p.m., Colin left Packer's Roost to return to the Flying Eagle Ranch (ranch). Colin was driving a pickup loaded with hay. Shortly thereafter, Jim left the Packer's Roost to return to the ranch and noticed hay on the

2

roadway.  Jim drove to the ranch and picked Colin up to return to retrieve the hay from the roadway.

The roadway in the area consists of four lanes of traffic, two headed east and two headed west.  The east and west-bound lanes are separated by a median strip approximately three feet wide.

Initially, Jim parked his pickup near the fog line on the right side of the road heading west.  The men picked up the hay that was scattered in the west-bound lanes of traffic.  Jim then drove across the highway into the passing lane for east-bound traffic and parked his vehicle in the passing lane.  After Jim parked, Colin raked the hay into piles and Jim loaded the hay into the truck.  Jim got into the pickup and backed it up to where Colin was standing.  Colin was standing in the passing lane for west-bound traffic, approximately three feet from the median strip, and was wearing blue jeans, a blue t-shirt, and a baseball cap.

Cady was traveling west in the passing lane of the roadway.  Jim's pickup headlights were on and were shining down the road, slightly to the left because of a curve in the roadway.  Colin was standing behind the headlights' beam, and the headlights prevented Cady from seeing Colin until he passed the headlights of the pickup.  At that point Colin was less than twenty feet from Cady's vehicle.  Cady struck Colin, who landed in the median of the roadway.  Colin was killed instantly.

Ken Sorely, a deputy of the Flathead County Sheriff's Office, was the first officer to arrive at the accident scene.  He noted that Jim's pickup headlights were on, but no emergency flashers

were on and there were no flares in the vicinity of the accident. Two members of the Coram volunteer fire department also noted the absence of any emergency flashers and flares, as did Highway Patrol Officer Cliff Crick.

Officer Crick investigated the accident and took measurements and witness statements. Officer Crick concluded that there was no action or inaction by Cady that caused the accident. At trial, Officer Crick testified that, in his opinion, "the cause [of the accident] was a pedestrian in dark clothes behind a set of headlights [who] was not visible to oncoming traffic."

Hislop, the wife and personal representative of Colin's estate, instituted a wrongful death action against Cady. The case was tried before a jury and the jury returned a special verdict finding that Cady was negligent, apparently based on Cady's testimony that he was driving five miles over the speed limit, but that Cady's negligence was not a cause of Colin's death. The District Court entered judgment on the verdict. Both parties filed a notice of appeal.

Our standard of review relating to discretionary trial court rulings, such as the giving of jury instructions and the admission of evidence at trial, is whether the trial court abused its discretion. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 604.

## I - NEGLIGENCE PER SE INSTRUCTION

Hislop contends that the District Court erred in failing to instruct the jury that Cady was negligent per se for violating §

4

61-8-361, MCA.  This statute provides:

> The driver of a motor vehicle traveling through defiles or canyons or on mountain highways shall hold such motor vehicle under control and as near the right-hand edge of the highway as reasonably possible.

In this case, Cady was traveling in the left-hand (passing) lane of a four-lane roadway.  Hislop asserts that, because the highway where the accident occurred is located in a mountainous region, Cady was negligent per se for driving in the passing lane.

To establish negligence per se, a plaintiff must prove:

1.    The defendant violated a particular statute;
2.    The statute was enacted to protect a specific class of persons:
3.    The plaintiff is a member of that class;
4.    The plaintiff's injury is the sort the statute was enacted to prevent: and
5.    The statute was intended to regulate a member of defendant's class.

VanLuchene v. State (1990), 244 Mont. 397, 401, 797 P.2d 932, 935.  The threshold element required to establish negligence per se is that the defendant violated a particular statute.  Here, Hislop contends the Cady violated § 61-8-361, MCA, by driving in the passing lane and not keeping his vehicle near the right-hand edge of the roadway.  We disagree.

We cannot conclude that § 61-8-361, MCA, applies to a four-lane roadway, regardless of whether such roadway is located in a mountainous region.  If the statute did apply, a driver could never utilize the left-hand lane of a four lane roadway, nor could a driver ever pass another vehicle.  Such reasoning contravenes common sense.  The purpose of multi-lane roadways is to facilitate the movement of traffic, and if all vehicles are required to drive

5

on the right-hand side of the road, that purpose is frustrated. Section 61-8-361, MCA, applies to winding, two-lane mountain roads where head-on collisions are a particular danger.

The appropriate governing statute in this case is § 61-8-328, MCA, which provides, in pertinent part:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules, in addition to all others consistent herewith, shall apply: (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety. . . .

This statute specifically deals with multi-lane roadways and governed Cady's conduct here, to the exclusion of § 61-8-361, MCA, which, we hold, does not apply to four-lane roadways.

Finally, Hislop argues that, had Cady been driving in the right-hand lane pursuant to § 61-8-361, MCA, he could have avoided hitting Colin. Even accepting that argument, it was purely fortuitous that Cady hit Colin in the passing lane: a few minutes prior to the accident, Colin was standing in the right-hand lane, the lane Hislop argues Cady should have occupied.

We hold that Cady did not violate § 61-8-361, MCA, as a matter of law. Because Hislop has failed to meet the threshold requirement necessary to establish negligence per se, we decline to address the remaining elements. We conclude that the District Court did not abuse its discretion in refusing to give a negligence per se instruction.

## II - TESTIMONY REGARDING CITATION

Hislop contends that the District Court erred in allowing

6

Officer Crick to testify that Cady did not receive a citation for a violation of § 61-8-361, MCA. The relevant testimony is as follows:

> [By attorney O'Brien]: Officer Crick, have you ever issued a citation to anyone on that statute [§ 61-8-361, MCA] while driving down a four-lane highway?
>
> [By Crick]: No, I haven't.
>
> [By attorney Jones]: Objection. It's irrelevant.
>
> [By District Judge]: No. Overruled. You may answer.
>
> [By Crick]: No, I haven't.

We agree that the issue of whether Officer Crick had ever cited anyone for a violation of this statute is irrelevant. However, as stated above, Cady did not violate § 61-8-361, MCA, as a matter of law. Therefore, we hold that the District Court's ruling amounts to harmless error.

## III — OFFICER'S OPINION TESTIMONY

Hislop next contends that the District Court erred in allowing Officer Crick to testify as to his opinion regarding the cause of the accident. We have previously ruled on this identical issue and have allowed such testimony.

In Hart-Anderson v. Hauck (1989), 239 Mont. 444, 781 P.2d 1116, a police officer who investigated an accident was asked his opinion as to the cause of the accident. The defendant objected on the basis of lack of foundation. We held that a police officer with years of experience in investigating accidents can testify as to his opinion regarding the cause of the accident. Hart-Anderson, 781 P.2d at 1118-19.

7

The purpose of the police officer's testimony is to assist the trier of fact on the issue of causation. In _Hart-Anderson_, the police officer had extensive experience in accident investigation and an adequate foundation was presented for his testimony. In addition, defense counsel cross-examined the police officer as to the basis of his opinion. _Hart-Anderson_, 781 P.2d at 1119. We held that the jury is free to decide the weight to give the police officer's testimony as to the cause of the accident. _Hart-Anderson_, 781 P.2d at 1119.

As in _Hart-Anderson_, the record here shows that Officer Crick had extensive experience in investigation and was properly qualified through training and experience to testify as to his opinion regarding the cause of the accident. Officer Crick has been employed as a highway patrol officer for eighteen years, has received literally hundreds of hours of training in accident investigation and reconstruction, and has investigated hundreds of accidents. In addition, Hislop's counsel had the opportunity to thoroughly cross-examine Officer Crick on the basis of his opinion. Officer Crick's testimony assisted the trier of fact on the issue of causation, and the jury was free to give his testimony any credence they felt appropriate. At trial, Hislop objected to Officer Crick's testimony, contending that such testimony invaded the province of the jury. As stated above, a police officer, properly qualified by training and experience in accident investigation, may be allowed to testify regarding his opinion of the cause of an accident. Because the jury was free to determine

8

what, if any, weight to accord to his testimony, we hold that Officer Crick's testimony did not invade the province of the jury.

On appeal, Hislop claims that Officer Crick was not properly qualified. We note, however, that, at trial, Hislop failed to object as to lack of foundation, contending only that the testimony invaded the province of the jury. It is well settled that we will not address an issue raised for the first time on appeal. Story v. City of Bozeman (Mont. 1993), 856 P.2d 202, 208, 50 St. Rep. 761, 763.

### IV - TESTIMONY REGARDING ALCOHOL

Finally, Hislop claims that the District Court erred in allowing testimony that Colin was in the Packer's Roost prior to his death. We disagree.

Prior to trial, Hislop moved to suppress evidence of alcohol consumption by Colin. The District Court granted the motion, ruling that the evidence had no probative value and was potentially prejudicial.

At trial, testimony was introduced that Colin had been in the Packer's Roost immediately prior to his death. However, there was no testimony given at any time during the trial that Colin had consumed any alcohol prior to his death. In addition, the District Court instructed the jury that use of alcohol was not an issue in the case and was not to be considered in making a decision.

Here, the jury found that Cady was negligent but that his negligence was not the cause of Colin's death. Therefore, the jury did not consider any alcohol consumption on the part of Colin, as

the issue of comparative negligence never arose. Hislop, herself, acknowledges in her brief that "[p]resumably the jury followed the trial court's instruction" regarding alcohol use. Therefore, we hold that Hislop's contention that the District Court erred in allowing testimony that Colin was in the Packer's Roost prior to his death is without merit.

Affirmed.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

10

October 21, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Russell K. Jones
Attorney at Law
N. 9 Post St., Ste. 315
Spokane, WA 99201

Kenneth E. O'Brien
Hash, O'Brien & Bartlett
P.O. Box 1178
Kalispell, MT 59903


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy