JUSTICE LEAPHART,
dissenting.
¶68 I dissent from the Court’s conclusion on Issue number two: “Whether the court erroneously allowed police officers to give expert opinion testimony when they were never qualified as experts?”
¶69 Rule 701, M.R.Evid., provides as follows:
If the witness is not testifying as an expert, the witness’ testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness’ testimony or the determination of a fact in issue.
Montana’s Rule 701 is identical to its federal counterpart, Rule 701, Fed.R.Evid.
¶70 Onstad, in her case-in-chief, presented testimony from three Billings police officers. Onstad elicited testimony from these officers as to the efficacy of security precautions taken in the Payless store and the predictability of an escalation in severity of a sexual offender’s actions. Payless objected to those questions as eliciting inadmissible lay testimony under Rule 701, M.R.Evid.
¶71 This Court notes that Onstad laid Rule 701 foundation that the officers’ opinions sprang from “their work and experience as police officers” and that one officer testified that it is “common knowledge” that employee safety increases when two employees are present in a business instead of one. Further, the Court notes that the officers “opined *276 that a Billings police officer would not advise a crime victim that Luplow’s behavior in the first two incidents was merely that of a “harmless pervert.’ ” Based upon the above foundation, this Court concludes that the District Court properly “limited the testimony within the range allowed under Rule 701, M.R.Evid., regarding lay opinions.”
¶72 In my view, the officers’ testimony as to the predictability of an escalation in severity of sexual offender’s actions exceeds the scope of lay witness opinion allowed by Rule 701. The question is whether the testimony of the officers is rationally based upon the perceptions of the officers/witnesses within the meaning of Rule 701, M.R.Evid.
¶73 We recently had occasion to apply Rule 701 in Rocky Mountain Ent. v. Pierce Flooring (1997), 286 Mont. 282, 951 P.2d 1326. In Rocky Mountain, Black, a shareholder of the corporation, sought to present scientific economic testimony as to his business’ future lost profits. Noting that there was no evidence that Black had specialized skill as an economist, we affirmed the district court’s refusal to allow Black to predict future lost profits.
A nonexpert witness is generally limited to testifying to matters of fact. Walden v. State (1991), 250 Mont. 132, 144, 818 P.2d 1190, 1197. Any lay opinions given must be based upon the witness’s own perceptions or helpful to a clear understanding of the witness’s testimony or a determination of a fact at issue. Rule 701, M.R.Evid.
Rocky Mountain, 286 Mont. at 291, 951 P.2d at 1331.
¶74 In Massman v. City of Helena (1989), 237 Mont. 234, 773 P.2d 1206, we upheld the trial court in its refusal to allow an assistant fire chief, who had not been listed as an expert witness, to testify to the ultimate effect of the fire fighting methods on the containment of the fire. We concluded that his testimony was based upon his technical training and knowledge rather than his personal perceptions:
As such, the substance of his opinion constituted an expert opinion rather than a lay witness opinion. An expert opinion generally is one “not within the range of ordinary training or intelligence.”
Massman, 237 Mont. at 242, 773 P.2d at 1210.
¶75 Our decisions in Rocky Mountain and Massman are consistent with federal decisions interpreting Rule 701, Fed.R.Evid., which has the same “personal perception” requirement as the Montana rule. See, e.g., Fireman’s Fund Ins. v. Alaskan Pride Partnership (9th Cir. 1997), 106 F.3d 1465, 1468 (insurance claims manager’s opinion testimony was admissible because it was based on his own perception and there was no evidence that he relied on insurance company report); *277 Teen-Ed, Inc. v. Kimball Int’l., Inc. (3rd Cir. 1980), 620 F.2d 399, 404 (accountant was permitted to testify as lay witness based on personal knowledge of balance sheets, but not allowed to answer hypothetical questions unless he was qualified as expert); Sowell v. Butcher & Singer, Inc. (3rd Cir. 1991), 926 F.2d 289, 298-300 (testimony about average prices extrapolated from quarterly reports was properly excluded under Rule 701, Fed.R.Evid., because witness’ testimony clearly was based on more than his own perceptions); TLT-Babcock, Inc. v. Emerson Elec. Co. (4th Cir. 1994), 33 F.3d 397, 400 (testimony properly excluded because witness lacked personal knowledge and any information that he had was obtained through reports he received from his staff).
¶76 In the case at hand, Payless, in its opening statement, contended that Payless had been told by the Billings Police, in regard to prior incidents involving Luplow, not to worry because he was a harmless pervert. Onstad contends that Payless’s “harmless pervert” theory opened the door to a “Did you say this?” rebuttal. The question is whether Onstad’s witnesses went beyond denying the statement and produced what can only be characterized as expert testimony as to the escalation of sex offenses.
¶77 Officer Jason Gartner’s testimony on this point was as follows:
Q. Officer, when we left off last night you had described for us, from Exhibit 23, the facts and some detail of Mrs. Shoemaker — both of the incidents that occurred where she was a victim of sex crime in February of ‘96, and you were working on the one in May of ‘97, correct? A. Yes.
Q. You had told the jury that the incident in May of‘97 had been assigned to the special detective unit dealing with sex crimes, such as flashing and the related other crimes, correct?
A. Correct.
Q. Now my question is this, did you ever say to Jennifer Shoemaker that the man that grabbed her and exposed himself to her and masturbated and ejaculated on the carpet in the Payless Store in the Heights in May of‘97, was a harmless pervert who would never hurt anyone?
A. Absolutely not.
¶78 As an officer investigating the prior incident he testified that he did not make the “harmless pervert” statement that was attributed to him by Payless. This testimony from Officer Gartner was directly responsive to the issue and was proper rebuttal. His subsequent testimony that “It’s well known to all of us these types of things escalate” *278 was objected to as expert testimony and the objection was properly sustained.
¶79 My concern, and the basis for this dissent, is with the testimony of Officer Sandra Leonard, that was presented during Onstad’s case-in-chief after an in camera discussion in which Onstad argued that a witness can be qualified under Rule 701 through his/her experience and Payless argued that if a witness is “qualified” through experience or education, that witness is an “expert,” not a lay witness under Rule 701; that Rule 701 only requires that the witness testify about something in the common experience.
¶80 The relevant portion of Officer Leonard’s testimony was as follows:
Q. Let’s move on to another subject. I want to lay some foundation for this. In your training and your education and your experience for the Billings Police Department, have you found any correlation between a sex crime that may start as a flashing sex crime, that may advance beyond flashing to some touching or masturbation and sex crime that may advance to an exposure and assault like Katie, and sex crimes going on towards something more serious like very serious bodily harm or murder, have you had experience — have you knowledge about such things because of your position in working in Billings as a police officer? That is my question. Mr. Speare [Payless’s counsel]: Your Honor, we would make the same objection. It’s irrelevant to a lay opinion.
Mr. Edwards [Onstad’s counsel]: I think this would be a yes or no answer.
The Court: Overruled.
The Witness: Yes.
Q. [by Mr. Edwards]: Would you then describe your experience to this jury, please?
A. My experience, a suspect doesn’t decide one day he is going to go out and sexually assault someone. This is something that he has worked up to over and over. You learn it’s not about sex. It’s a power issue. He was using power here. It’s about being in control.
Over and over, as I said, they don’t go out and decide one day they are going sexually assault someone. They start by going to the mall and watching victims or potential victims. Maybe touching themselves. Then that is not enough. They graduate to exposing themselves to people. It’s a shock value.
*279 In this case, we found, just what had been going on in Billings, that this was escalating. He had been going all over Billings exposing himself or propositioning females. Now all of a sudden that is not enough, and until September of ‘97, that is what he had been doing. On this night that wasn’t enough.
Q. Have you had discussions, as part of your training and part of your work in trying to prevent and minimize the damage from these types of crimes, they are foreseeable? They are going to happen, aren’t they?
A. Yes, they are.
Q. Sometimes we predict the future by reviewing the past in particular locations?
A. Yes, we do.
MR. SPEARE: I’m going to obj ect. This is way beyond lay opinion.
Q. [by Mr. Edwards]: I’m asking you in terms of strictly a lay opinion. I’m talking about your experience and your training and your patrolling the streets for us here in Billings, are you confining all your answers to that?
A. Yes, I am.
Q. My question was, when there are those types of events occurring, it’s foreseeable that it’s going to happen again in a locale, isn’t it? MR. SPEARE: I object. Same objection, Your Honor.
THE COURT: Overruled.
THE WITNESS: I would think, yes.
¶81 This testimony goes well beyond responding to the issue of what was said by the Billings Police Department Officers in handling the prior incidents. Officer Leonard offered psychological testimony about sex offenders in general (“they” start out by going to the mall — "they" graduate to exposing themselves). She testified as to what “we found,” i. e., the Billings Police Department. Officer Leonard was not testifying as to matters of common knowledge or experience nor was her testimony based upon her personal perceptions as to this incident or this offender. Rather, like the assistant fire chief in Massman, she was offering expert testimony based upon her experience and training as a police officer. This testimony clearly exceeded the scope of Rule 701, M.R.Evid., and the District Court abused its discretion in not sustaining Payless’s objection.
¶82 Onstad cites to our decision in Hislop v. Cady (1993), 261 Mont. 243, 862 P.2d 388, as authority for allowing Officer Leonard to give *280 opinion testimony under Rule 701. Hislop contended that the trial court erred in allowing Officer Crick to give his opinion as to the cause of the accident in question. Without referencing the Rules of Evidence, this Court noted that Officer Crick had “extensive experience in investigation and was properly qualified through training and experience to testify as to his opinion regarding the cause of the accident.” Hislop, 261 Mont. at 249, 862 P.2d at 392. Although the Court did not reference the Rules of Evidence, Onstad argues nonetheless that the decision “obviously deals with Rule 701 foundational criteria (perception, experience, assistance to jury on fact in issue).” Onstad reads too much into the Hislop decision. The fact that a foundation for the officer’s testimony was based upon training and experience and the testimony was for the purpose of assisting the trier of fact would suggest that the officer was an expert under Rule 702 as opposed to a lay witness under Rule 701. It is Rule 702, not 701 which requires that the witness be qualified as an expert by knowledge, skill, experience, training, or education. Rule 701 only requires that the witness testify based upon his personal perception. The Hislop decision lends no support to Onstad’s contention that Officer Leonard’s testimony as to the psychology and predictability of sex offenders falls within the purview of lay testimony under Rule 701, M.R.Evid.
¶83 Officer Leonard’s expert testimony went to the heart of Onstad’s theory that, given the expectation that Luplow’s “harmless pervert” exhibitions would be expected to escalate to violent conduct, Payless had knowledge of a high probability of harm to Onstad and acted with indifference to that harm. The admission of undisclosed expert testimony from Officer Leonard constitutes prejudicial error and I would reverse.
JUSTICE GRAY and JUSTICE NELSON join in the foregoing dissenting opinion.