FILED

05/28/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0131

DA 22-0131

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 109

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

JOHNATHAN JAMES,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC-21-53
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Chad Wright, Appellate Defender, Joshua James Thornton, Assistant
Appellate Defender, Helena, Montana

     For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

          Marcia Boris, Lincoln County Attorney, Libby, Montana

Submitted on Briefs:  October 11, 2023

Decided:  May 28, 2024

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Johnathan James appeals a jury conviction of felony Driving Under the Influence (DUI), § 61-8-401(1)(a), MCA (recodified at § 61-8-1002(1)(a), MCA), and Driving While Suspended, § 61-5-212(1)(a)(i), MCA, from the Nineteenth Judicial District Court, Lincoln County.  We affirm.

¶2     We restate the issue on appeal as follows:

*Did the District Court abuse its discretion by allowing the arresting officer to provide lay opinion testimony that James was in "actual physical control" of his vehicle?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     James was charged by information with felony DUI, fourth offense, and Driving While Suspended on June 1, 2021, following a May 23, 2021 arrest by Lincoln County Deputy Sheriff Derek Breiland.  After a November 16-17 trial, the jury returned a unanimous verdict on both charges.  Subsequently, James filed a sentencing memorandum, based on a presentence investigation report (PSI), claiming the charge should have been misdemeanor DUI, third offense.  The District Court sentenced James according to the misdemeanor DUI provisions and Driving While Suspended.

¶4     On direct examination, during the State's case-in-chief, Breiland testified that on May 23, 2021, he responded to a report from employees at a Town Pump in Libby, Montana, of a man sleeping in a vehicle parked at the gas pump.  Breiland stated that when he arrived, he noticed the car was running and James was slumped over the center console.  James was apparently asleep, with several empty containers of alcohol around him.  After

2

Breiland tapped on the window, and James rolled the window down, Breiland observed that James had bloodshot eyes, smelled of alcohol, and was slurring his speech. James did not have a driver's license, and he reported to Breiland that it had been suspended for about five years.

¶5 Breiland further testified that James was unable to keep his balance during a field sobriety test, and that he ultimately refused to complete the test. After transporting James to the Lincoln County Detention Center, Breiland requested a breathalyzer test, which James also refused. Breiland then obtained a warrant for a blood draw and transported James to Cabinet Peaks Medical Center, where the blood draw was performed. James' blood alcohol concentration was 0.322 percent.

¶6 On cross examination, defense counsel asked Breiland a series of questions generally intended to undermine Breiland's observations. Counsel questioned whether Breiland could have been sure James was asleep, for example. He questioned whether James' perception of how long he had been parked at the pump was relevant to an inquiry about his inebriation. Further, counsel implied James plausibly could have begun consuming alcohol after he was safely parked at the Town Pump, where he had pulled over because he was overcome by tiredness. Counsel additionally asked whether Breiland could have been certain the vehicle was running while James was parked at the pump.

¶7 During redirect examination, the following exchange occurred between the prosecutor and Breiland:

> State: Deputy Breiland, [defense counsel] asked you a number of questions about the length of time [James] was there, whether he left his car, those types of questions, do you recall those?

Breiland: Yes.

State: And with regard to your investigation of somebody . . . being in actual physical control of a vehicle while under the influence, are those questions . . . relevant to your inquiry as to the actual physical control issue?

Breiland: No.

State: And at the time that you approached that vehicle and made contact with the Defendant, was the Defendant in actual physical control of that motor vehicle?

Breiland: Yes, he was.

Defense counsel objected, arguing the question called for a legal conclusion, invading the province of the jury. The District Court overruled the objection, and the jury ultimately convicted James of DUI and Driving While Suspended.

## STANDARD OF REVIEW

¶8 A district court has broad discretion in making determinations about the admissibility of evidence, which we review for an abuse of discretion. *State v. Strizich*, 2021 MT 306, ¶ 17, 406 Mont. 391, 499 P.3d 575 (citation omitted).

## DISCUSSION

¶9 Section 61-8-401(1)(a), MCA (recodified at § 61-8-1002(1)(a), MCA), provided[1] that "[i]t is unlawful and punishable . . . for a person who is under the influence of [] alcohol to drive or be in *actual physical control* of a vehicle upon the ways of this state

[1] In 2021, § 61-8-401(1)(a), MCA, was amended and recodified at § 61-8-1002(1)(a), MCA. The statute now reads: "A person commits the offense of driving under the influence if the person drives or is in actual physical control of [] a vehicle or a commercial motor vehicle upon the ways of this state open to the public while under the influence of alcohol . . . ." James was charged and convicted under § 61-8-401(1)(a), MCA, therefore its language controls.

open to the public." (Emphasis added.) James argues the District Court abused its discretion by allowing Breiland to provide expert testimony as to whether James was in "actual physical control" of his vehicle, contending that it amounts to a legal conclusion. The State argues that Breiland was appropriately not qualified as an expert, and an officer may offer his lay opinion on an element of a crime when an appropriate foundation has been laid for his experience in such matters.

¶10 *Did the District Court abuse its discretion by allowing the arresting officer to provide lay opinion testimony that James was in "actual physical control" of his vehicle?*

¶11 Lay opinion testimony is admissible if the testimony is given in the form of opinions or inferences and is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." M. R. Evid. 701. "In applying Rule 701 we have held that police officers may testify to 'matters as to which they have extensive experience and are properly qualified through training and experience.'" *State v. Frasure*, 2004 MT 305, ¶ 17, 323 Mont. 479, 100 P.3d 1013 (quoting *Onstad v. Payless Shoesource*, 2000 MT 230, ¶ 40, 301 Mont. 259, 9 P.3d 38).

¶12 We have previously recognized that whether an individual is intoxicated is common knowledge and permissible lay testimony. *State v. Bradley*, 262 Mont. 194, 198, 864 P.2d 787, 789 (1993); *State v. Hardy*, 185 Mont. 130, 134, 604 P.2d 792, 795 (1980); *State v. Trueman*, 34 Mont. 249, 85 P. 1024 (1906); *see also* Commission Comments, M. R. Evid. 701 ("Montana case law provided [an] additional exception to the traditional rule . . . intoxication.").

5

¶13    The factors that an officer weighs to determine whether probable cause exists to make a DUI arrest may likewise be satisfied based on common knowledge and observation. We have enumerated a non-exhaustive list of those factors:

> (1) where in the vehicle the defendant was located;
> (2) whether the ignition key was in the vehicle, and where the key was located;
> (3) whether the engine was running;
> (4) where the vehicle was parked and how it got there;
> (5) whether the vehicle was disabled (broken down, mechanically inoperable, stuck, or otherwise immovable); and
> (6) how easily the defendant could have cured the vehicle's disability.

*State v. Sommers*, 2014 MT 315, ¶ 35, 377 Mont. 203, 339 P.3d 65.  Breiland testified that officers are trained to look for these factors.  It is well within the scope of an officer's training and experience to make these observations when evaluating whether an intoxicated individual is in "actual physical control" of their vehicle and probable cause has formed for an arrest.

¶14    Our caselaw supports the admission of these observations as lay opinion testimony under M. R. Evid. 701.  In *Frasure*, for example, we upheld a district court decision allowing an officer to provide his lay opinion that a defendant had the "intent to sell," even though it was a central element of her charge.  *Frasure*, ¶ 18.  We reasoned the State laid a "sufficient foundation for them to provide lay opinion testimony as to whether it was likely that [the defendant] possessed the drugs with intent to sell."  *Frasure*, ¶ 18.  Like Breiland here, the officer in *Frasure* did not testify as to the defendant's guilt, but rather to

6

observations informed by experience and training designed to ensure that officers make lawful arrests. *Frasure*, ¶ 18.[2]

¶15     The Dissent, ¶ 32, argues that our holdings in *Frasure* and *Onstad*[3] stem from a misreading of *Hislop v. Cady*, where we affirmed that an officer with extensive experience in accident investigations may testify to the cause of a motor vehicle accident. 261 Mont. 243, 249-50, 862 P.2d 388, 392 (1993); *see also Hart-Anderson v. Hauck*, 239 Mont. 444, 448-49, 781 P.2d 1116, 1118-19 (1989) (holding the same). While the Dissent is correct that we characterized the officers' testimony as expert testimony in *Hislop* and *Hart-Anderson*, Dissent, ¶ 32, we disagree that *Onstad* and *Frasure* are distinguishable because they involved lay testimony. There was no discussion in *Hislop* or *Hart-Anderson* about the distinction between lay testimony and expert testimony. Nor was there any discussion of the Rules of Evidence. The broad scope of the analysis and conclusions in *Hislop* and *Hart-Anderson* provides a basis upon which officers may testify as to their reasons for making an arrest under M. R. Evid. 701 *or* M. R. Evid. 702, depending on the

---

[2] The Dissent opines that our reliance on *Frasure* is misplaced because knowledge of the illicit drug trade "would not typically be within the realm of common experience of the average Montanan called to jury duty[,]" while indications of intoxication would be. Dissent, ¶ 32, n.2. The logic underlying this point is, apparently, that the jury benefited more from the officer's testimony on the illicit drug trade in *Frasure* because he understood it better than a lay person can, whereas a lay person is capable of forming an opinion on "actual physical control" even without input on the matter from an arresting officer. This observation simply underscores the point that an officer trained to look for signs of impairment is well-suited to comment on his reasons for making a DUI arrest because the factors underpinning "actual physical control" are simple observations.

[3] Affirming that an officer may provide lay testimony—based on their training and experience— as to whether it is "common knowledge" that employee safety increases "when two employees are present in a business instead of just one." *Onstad*, ¶ 41.

nature of the crime and the extent of the training or experience required to provide an opinion on the matter.

¶16　In cases involving complex accident investigations, like *State v. Gregoroff* and *State v. Nobach*, for example, it is imperative that the record demonstrate the officer is qualified as an expert on the matter. *State v. Gregoroff*, 287 Mont. 1, 7, 951 P.2d 578, 582 (1997) (affirming that an officer with requisite experience may testify that a defendant was "under the influence of alcohol to an extent that it diminished his ability to safely operate a motor vehicle"); *State v. Nobach*, 2002 MT 91, 309 Mont. 342, 46 P.3d 618 (rejecting officer's testimony that defendant's accident was caused by drugs when it is unclear whether officers can discern whether individuals are under the influence of drugs *other than* alcohol). We clearly articulated that *Gregoroff* and *Nobach*, combined, dictate that "a law enforcement officer can offer an expert opinion about the *cause of an accident* so long as sufficient foundation is presented, as required by Rule 702 . . . ." *Nobach*, ¶ 20 (emphasis added). While *Gregoroff* may have thus "filled in a blank" left in *Hart-Anderson* regarding the extent of admissible testimony in *accident investigations*, *Nobach*, ¶ 20, the gap was not so wide that it included cases, like this, where an officer offered his opinion on a matter requiring substantially less training or experience to observe.

¶17　Here, the evidence was appropriately allowed under M. R. Evid. 701 because there was no need to qualify Breiland as an expert on what constitutes "actual physical control." Breiland's testimony was rationally based on his perception of James at the time of the arrest, in addition to his knowledge of the factors that satisfy "actual physical control." M. R. Evid. 701 allows such testimony as it is helpful to the jury in making its

8

determination as to the factual basis for the charge. That is particularly true in this case because the defense muddled what factors the jury should consider in its deliberations. The defense opened the door for clarification about what factors constitute "actual physical control" under *Sommers,* thus Breiland's testimony was properly admitted lay opinion testimony under M. R. Evid. 701.

¶18 The prohibition against expert testimony as to legal conclusions in *Kizer v. Semitool* is inapposite. 251 Mont. 199, 824 P.2d 229 (1991). In *Kizer*, we emphasized expert witnesses may not "give a legal conclusion or [] apply the law to the facts in his answer." 251 Mont. at 206, 824 P.2d at 233 (quoting Commission Comments, M. R. Evid. 704). There, an expert witness was allowed to testify to his opinion that a defendant breached the implied covenant of good faith and fair dealing. 251 Mont. at 204-05, 824 P.2d at 232. We reversed the district court, holding the expert's testimony invaded the province of the jury. 251 Mont. at 208-09, 824 P.2d at 235. Unlike *Kizer*, our decision here is guided by M. R. Evid. 701 because the standard for lay opinion testimony is necessarily broader for officer testimony than for expert witnesses under M. R. Evid. 704.

¶19 Before making an arrest, officers are required by law to assess the evidence they have observed, then determine if probable cause exists that the elements of the crime forming the basis of the offense are present. *State v. Williamson*, 1998 MT 199, ¶ 12, 290 Mont. 321, 965 P.2d 231. For DUI, as noted, an officer must determine that probable cause exists for a person under the influence of alcohol to be in "actual physical control" of a

vehicle.[4]  An arrest must fundamentally be rooted in applying laws, which officers are trained to understand, to the facts.  Breiland made that calculation here.  An officer can testify as to why he made the arrest.

¶20    We agree with the Dissent that the jury should ultimately weigh the *Sommers* factors and make the decision as to the "actual physical control" element for a DUI.  Along with the *Sommers* factors, Jury Instruction No. 14 specifically provided that "it is up to the jury to decide what weight to give to each factor."[5]  The jury made its decision accordingly.

## CONCLUSION

¶21    Based on how the questions to Breiland were presented, it was not an abuse of discretion to allow Breiland to testify that James was in "actual physical control" of his vehicle and therefore subject to arrest.  The State was not required to qualify Breiland as an expert.  Breiland offered lay opinion testimony in response to a line of questioning directed at his perceptions as a deputy sheriff, and those perceptions formed the basis for his belief that probable caused existed to make the arrest.

¶22    We affirm.


                                        /S/ MIKE McGRATH

---

[4] It is undisputed that Breiland had probable cause to arrest.

[5] This is not a situation, as the Dissent, ¶¶ 39-42, contends, where the contested evidence improperly bears on the jury's ultimate determinations as to witness credibility or the defendant's guilt.  Expert testimony regarding the results of polygraph tests was excluded in *State v. Walker* because jurors tend to view polygraph tests with an "aura of infallibility."  2018 MT 312, ¶ 19, 394 Mont. 1, 433 P.3d 202.  Jurors are not similarly apt to "abandon their duty to assess credibility and guilt" based on preconceptions about the credibility of police officers, like they are with polygraph tests.  *Walker*, ¶ 19.

We Concur:

/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE

Justice James Jeremiah Shea, dissenting.

¶23   I dissent from the Court's holding that an arresting officer can provide ostensibly lay opinion testimony, incongruously based on his "training and experience," that a defendant, in the subjective opinion of the arresting officer, satisfies an essential—and in this case determinative—element of a crime. Opinion, ¶ 13. The Court fails to meaningfully engage with the reality that today's Opinion contradicts the binding precedent of both *Sommers* and *Walker*, both of which place the determination as to whether the State has met its burden as to this essential element of the crime in the hands of the jury. In a holding that extends far beyond the limitations of this case, and the crime of DUI in general, the Court perpetuates a confusing conflation of the explicit language of M. R. Evid. 701 and 702—in which purported "lay witnesses" require "training and experience" to offer "lay opinions" on issues we have expressly held are the exclusive province of the jury to weigh and decide. Finally, under the dubious guise of allowing an officer to testify "as to why he made the arrest," Opinion, ¶ 19—something that the Court concedes was not at issue in this case—the Court opens a gaping loophole for the State to elicit conclusory testimony regarding "the determinative factor as to the guilt or innocence of a defendant in a jury-tried case," something we held to be the *exclusive* province of the

11

jury in *Walker*, ¶ 19—a precedent the Court arbitrarily side-steps despite its clearly applicable reasoning.

¶24    Since shortly after the phrase "actual physical control" was first included in Montana's DUI statute in 1955, our courts have wrestled with how a jury is to make that factual determination.  Our first case addressing the issue was *State v. Ruona*, 133 Mont. 243, 321 P.2d 615 (1958) (overruled in part by *State v. Christiansen*, 2010 MT 197, ¶¶ 9-10, 357 Mont. 379, 239 P.3d 949).  In *Ruona*, we defined "actual physical control" according to the dictionary definition of each word in the phrase, concluding that "one could have 'actual physical control' while merely parking or standing still so long as one was keeping the car in restraint or in position to regulate its movements."  *Ruona*, 133 Mont. at 248, 321 P.2d at 618.  In the ensuing decades, we have addressed various facets of this issue: *See, e.g., State v. Taylor*, 203 Mont. 284, 287, 661 P.2d 33, 34 (1983) and *Gebhardt v. State*, 238 Mont. 90, 96-97, 775 P.2d 1261, 1266 (1989) (whether a vehicle's inability to move is a factor); *State v. Robison*, 281 Mont. 64, 68-69, 931 P.2d 706, 709 (1997) (holding that the jury instruction stating "[o]ne may be in actual physical control of a motor vehicle if he is physically inside an operational motor vehicle with the potential to operate or drive that motor vehicle while under the influence of alcohol" was overbroad because it could encompass passengers); *Turner v. State*, 244 Mont. 151, 155, 795 P.2d 982, 984-85 (1990) (affirming jury's determination that defendant had actual physical control where defendant was pushing his motorcycle down the street).  Until this Opinion, throughout the many years that we have wrestled with the various considerations and

12

factors at play in determining whether a defendant was in "actual physical control" of a vehicle, the one constant was that the determination was solely the jury's function.

¶25 In *Sommers*, we coalesced the case law addressing the various issues and factual scenarios from Montana and other states that have similarly struggled with defining "actual physical control." We held:

> [W]hen determining the element of actual physical control of a vehicle, *the fact finder* should consider the totality of the circumstances rather than focusing only upon the circumstances of the vehicle and the defendant at the time they are discovered.

*Sommers*, ¶ 28 (emphasis added). We noted that "[w]here circumstantial evidence indicates that the vehicle arrived at the location it was discovered as a result of the defendant driving or physically controlling the vehicle while under the influence, *the jury* may infer the defendant exercised actual physical control." *Sommers*, ¶ 28 (emphasis added). Recognizing that "determining whether an individual had actual physical control of a vehicle is a fact-intensive inquiry which may require consideration of a wide variety of circumstances," we adopted a totality-of-the-circumstances test, which "allows *the fact finder* to consider all relevant factors in determining whether the defendant had actual physical control." *Sommers*, ¶ 33 (emphasis added). We noted that "[a] totality-of-the-circumstances test allows *the jury* to consider difficult-to-foresee situations which may nonetheless support a determination that the defendant was in actual physical control of the vehicle." *Sommers*, ¶ 34 (emphasis added). Toward that end, we identified "various factors *for the jury* to consider when determining whether a defendant had actual physical control." *Sommers*, ¶ 35 (emphasis added). These factors include:

13

(1) where in the vehicle the defendant was located;

(2) whether the ignition key was in the vehicle, and where the key was located;

(3) whether the engine was running;

(4) where the vehicle was parked and how it got there;

(5) whether the vehicle was disabled (broken down, mechanically inoperable, stuck, or otherwise immovable); and

(6) how easily the defendant could have cured the vehicle's disability.

*Sommers*, ¶ 35. While this list is not intended to be all-inclusive, and we have stated that the jury may consider other relevant factors not on the list, the Court's Opinion has now added an explicit seventh factor for the jury's consideration: "What does the State think?"

¶26 Notwithstanding our holding in *Sommers*, ¶ 35, that it is for "the jury to decide what weight to give to each factor," the Court justifies allowing the arresting officer to testify as to whether an essential—in this case determinative—element of a crime was satisfied because "[i]t is well within the scope of an officer's training and experience to make these observations when evaluating whether an intoxicated individual is in 'actual physical control' of their vehicle and probable cause has formed for an arrest." Opinion, ¶ 13. Since James is not challenging the basis for his arrest the point the Court is attempting to make is not entirely clear. But more to the point, nobody is contending that an officer cannot testify as to their observations of the *Sommers* factors. Of course they can. But it is for "the jury to decide what weight to give to each factor." *Sommers*, ¶ 35.

¶27 The Court's Opinion engages in a confusing and unnecessary conflation of Rules 701 and 702 that perpetuates an entirely new class of witness: the "lay-expert." The Court's

14

endorsement of this quasi-expert testimony essentially ratifies a third category that is neither supported, nor supportable, by the rules of evidence or our case law. Admitting purportedly *lay witness* testimony predicated on a witness's "training and experience" makes no sense, since it echoes, almost verbatim, the requirements of admissibility for *expert witness* testimony under M. R. Evid. 702. Holding that testimony may be admissible under Rule 701 "or" 702, Opinion, ¶ 15, also ignores the plain and mutually exclusive language of Rule 701, stating "[i]f a witness is *not* testifying as an expert . . ." M. R. Evid. 701 (emphasis added). Creating this hybrid class of lay-expert witnesses nullifies the explicit prohibition on expert witnesses testifying to legal conclusions recognized by cases like *Kiser*, which the Court dismisses as "inapposite" because—despite Deputy Breiland's testimony being predicated on his "training and experience"—he was not offered or qualified as an expert witness. Opinion, ¶¶ 17-18.

¶28   The Court's decision to expand Rule 701 to the extent that, in the context of an arresting officer's testimony, it completely swallows the admissibility standard of Rule 702, has been rejected at the federal level and in other states. *See State v. Rothlisberger*, 2006 UT 49, 147 P.3d 1176; *see also United States v. Novaton*, 271 F.3d 968, 1009 n.9 (11th Cir. 2001) (opining that under the amended version of Fed. R. Evid. 701, "experiences which provided the testifying agents with a basis for rationally perceiving the information provided in their opinion testimony in this case would constitute 'specialized knowledge' [that may now] be admissible *only* under Rule 702.") (emphasis added).

¶29     At the time of the *Rothlisberger* decision, Utah R. Evid. 701, read the same as the current M. R. Evid. 701.[1]   After analyzing the explicit language of Rules 701 and 702, including the federal Rule 701 from which both Montana and Utah's Rules are based, the Utah Supreme Court concluded that "if testimony, 'opinion or otherwise,' is based on 'scientific, technical, or other specialized knowledge,' it is within the scope of [Rule 702] and may not be admitted as lay fact testimony." *Rothlisberger*, ¶ 20.  The court based its conclusion in part on the fact that:

> [R]ule 701 by its explicit terms applies only to lay testimony.  That rule states that the witness may not be "testifying as an expert."  The reference to "an expert" logically leads to rule 702, which essentially defines an expert as one who testifies based on "scientific, technical, or other specialized knowledge." Given the language of these two rules, the requirement that we give effect to all portions of a rule demands that we maintain a distinction between rules 701 and 702 and, accordingly, disallow admission of testimony under 701 where it is based on specialized knowledge.

*Rothlisberger*, ¶ 23.  The *Rothlisberger* court noted that Fed. R. Evid. 701 was amended in 2000 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Rothlisberger*, ¶ 25 (citation omitted).  The court dubbed cases where courts have admitted lay testimony in the manner endorsed by the Court today, specifically citing our holding in *Frasure*, "unpersuasive." *Rothlisberger*, ¶ 28.

---

[1] Utah's Rule 701 was amended in 2009 to conform with the *Rothlisberger* decision and amendments to Fed. R. Evid. 701.  Those versions of Rule 701 now contain a third requirement that the testimony is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Utah R. Evid. 701; Fed. R. Evid. 701.

¶30 The Court's conclusion, Opinion, ¶ 15, that "officers may testify as to their reasons for making an arrest under M. R. Evid. 701 *or* M. R. Evid. 702" contradicts the explicit recognition in *Nobach* that training and experience have no place in the admissibility inquiry under Rule 701. In *Nobach*, we rejected the State's contention that *Hart-Anderson* supported admission of an officer's opinion about the cause of an accident without first qualifying the officer as an expert. *Nobach*, ¶ 18. We held:

> While we did not specifically address either Rule 701 or 702 . . . in *Hart-Anderson*, our reliance on the officer's training and experience, together with our statement that an adequate foundation was presented, at the very least suggests that we had in mind the foundational requirement of Rule 702 that an expert be qualified by "knowledge, skill, experience, training, or education[.]" *Nothing in Rule 701 . . . or our cases thereunder, suggests the necessity or propriety of such a focus in determining whether a lay opinion be admitted.*

*Nobach*, ¶ 18 (emphasis added).

¶31 Further underscoring the fact that *Hart-Anderson* does not support the creation of this hybrid "Rule 701.5" testimony by law enforcement officers are the cases relied upon by *Hart-Anderson*. *See Foreman v. Minnie*, 211 Mont. 441, 447, 689 P.2d 1210, 1213 (1984) (affirming admission of *expert testimony* from a sheriff's deputy on the cause of a car accident); *Goodnough v. State*, 199 Mont. 9, 19, 647 P.2d 364, 369 (1982) (affirming admission of highway patrolman's *expert testimony* on the speed of a vehicle based on the vehicle's skid marks); *Rude v. Neal*, 165 Mont. 520, 526, 530 P.2d 428, 432 (1974) (holding highway patrolman was properly qualified as an *expert* to estimate the speed of the vehicle before driver applied his brakes).

¶32 The Court's attempt to preserve the holdings in *Frasure* and *Onstad* while distinguishing *Gregoroff* and *Hart-Anderson*, Opinion, ¶¶ 15-16, is unavailing. Both

17

*Frasure* and *Onstad* rely exclusively on our holding in *Hislop* for the proposition that "police officers may testify to 'matters as to which they have extensive experience and are properly qualified through training and experience.'" *Frasure*, ¶ 17 (quoting *Onstad*, ¶ 40); *Onstad*, ¶ 40 (overruled in part by *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 21, 336 Mont. 105, 152 P.3d 727) (citing *Hislop*, 261 Mont. at 249, 862 P.2d at 392); *Hislop*, 261 Mont. at 249, 862 P.2d at 392 (citing *Hart-Anderson*, 239 Mont. at 449, 781 P.2d at 1119). The crucial mistake made by the Court in *Frasure* and *Onstad*, and perpetuated by this Opinion, is that *Hislop* did not concern lay testimony, and asserting that *Hislop* provides a basis for admitting lay testimony based on an officer's "training and experience" requires supplementing the *Hislop* decision with analysis that is plainly absent from that opinion. *Hart-Anderson* concerned *expert* testimony, and *Hislop* followed that reasoning, deeming the issue there "identical" to the issue in *Hart-Anderson*. *Hislop*, 261 Mont. at 249, 862 P.2d at 392.[2] Simply put, *Onstad* and *Frasure* are irreconcilable with our own

---

[2] The Court's reliance on *Frasure* is misplaced in any event. In *Frasure,* we held that it was appropriate for police officers who had "extensive training and experience in the methods used in the illicit drug trade and the prices that illicit drugs, such as methamphetamine, generally garner . . . provided a sufficient foundation for them to provide lay opinion testimony as to whether it was likely that [the defendant] possessed the drugs with intent to sell." We can only hope that knowledge of "methods used in the illicit drug trade and the prices that illicit drugs, such as methamphetamine, generally garner" would not typically be within the realm of common experience of the average Montanan called to jury duty. *See, e.g., United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991) ("The average juror would not know whether [the defendant's 6.7 grams of rock cocaine] is a mere trace, or sufficient to pollute 1,000 people.") Conversely, driving a car is within the realm of common experience of the average Montanan called to jury duty. It does not require "extensive training and experience" to assess what weight to give to the various factors we laid out in *Sommers* in determining whether a defendant was in actual physical control of a vehicle. Certainly it is appropriate for the officer, or any other witness for that matter, to testify to their observations of those various factors that may indicate whether a defendant was or was not in actual physical control of a vehicle. But it remains "up to the jury to decide what weight to give to each factor." *Sommers*, ¶ 35.

case law and the plain language of Rules 701 and 702.  Instead of taking the opportunity to remedy this abject misreading of our rules of evidence, the Court chooses to perpetuate it.

¶33    Even if the Court's holding is not providing parties an avenue for evading the prohibition on experts testifying to legal conclusions, and even if this testimony—which according to the Court is based on "specialized knowledge" informed by Breiland's "training and experience"—is somehow beyond the purview of Rule 702, today's holding directly contradicts our case law prohibiting *nonexpert* witnesses from "stat[ing] a conclusion or giv[ing] an opinion of law." *In re Estate of Smith*, 230 Mont. 140, 148, 749 P.2d 512, 517 (1988) (citing M. R. Evid. 701).  "Testimony of nonexpert witnesses is confined to matters of fact, as distinguished from matters of law." *Estate of Smith*, 230 Mont. at 148, 749 P.2d at 517.  That is unless, as the Court holds, a *lay witness* is "properly qualified through training and experience."  Opinion, ¶ 11.

¶34    So now that the Court has opened the door for the State to present "lay-expert" opinion testimony as another factor "appropriate for the jury to consider in determining whether a defendant had actual physical control of a vehicle," *Sommers*, ¶ 35, due process requires that the defendant be allowed to call his own lay-expert witness to opine on the subject.  Based on the precedent this Opinion sets, it is not hard to envision future DUI defendants pursuing this very course of action—employing individuals with similar "training and experience" in DUI investigations to testify as to whether or not the defendant was in actual physical control of the vehicle.  Provided the defendant's witness is "properly

19

qualified through training and experience," Opinion, ¶ 11, I cannot conceive as to what the objection might be.

¶35    The fundamental infirmity in the Court's Opinion is illustrated by its purported basis for allowing an officer to testify that a defendant was in actual physical control of the vehicle. Noting that "an officer must determine that probable cause exists for a person under the influence of alcohol to be in 'actual physical control' of a vehicle," the Court submits this as the dubious basis for holding that an "officer can testify as to why he made the arrest." Opinion, ¶ 19. The entire sum and substance of the Court's Opinion is summarized in its concluding paragraph that Breiland was properly allowed to testify that "James was in 'actual physical control' of his vehicle and therefore subject to arrest" because it went to "his perceptions as a deputy sheriff, and those perceptions formed the basis for his belief that probable cause existed to make the arrest." Opinion, ¶ 22. Aside from the fact that the Court never explains—and certainly cites no authority—as to when probable cause to make an arrest became an issue for the jury to decide, the Court concedes that probable cause for James's arrest was not at issue in this case.

¶36    The Court concludes its Opinion by noting Breiland should have been allowed to testify to perceptions that formed the basis for his belief that probable cause existed to make the arrest. But, at the same time as the Court submits this as the purported basis for Brieland's testimony, the Court contradictorily notes that "[i]t is undisputed that Breiland had probable cause to arrest." Opinion, ¶ 19 n. 4. This first begs the question: Since when did probable cause to arrest become a question for the jury?

20

¶37　In addition to the Court setting the stage for this battle of "lay-experts," significant questions are raised as to how courts grapple with the procedural tangle this holding creates that extend far beyond this case. Boiled down, the Court's entire basis for allowing an officer to testify that a defendant was in actual physical control of a vehicle is to allow the officer to explain "why he made the arrest." Opinion, ¶ 19. So, is this testimony rendered inadmissible if a defendant simply stipulates pretrial to probable cause for the arrest after the denial of pretrial motions to dismiss or suppress? Can parties avoid expert disclosure requirements by characterizing opinion testimony as lay testimony rather than expert testimony, even though the basis for the proffered "lay testimony" includes the witness's training or experience? Can a party object to lay opinion testimony if the lay witness lacks the requisite "training and experience"? "[D]epending on the nature of the crime and the extent of the training or experience required to provide an opinion on the matter," Opinion, ¶ 15, does the proffered testimony fall under Rule 701, Rule 702, or both?

¶38　The Court states, that the *Sommers* factors "may . . . be satisfied based on common knowledge and observation." Opinion, ¶ 13. However, while the officer may testify as to his observations of the various *Sommers* factors, it is the jury's province, in the exercise of its common sense and collective judgment, to weigh those factors and make the determinative judgment as to whether or not the defendant was in actual physical control of the vehicle. This is particularly true in a case like this when the question of whether or not the defendant was in actual physical control of a vehicle is the determinative factor as to his guilt or innocence.

¶39    We have held that allowing a witness to testify to "the determinative factor as to the guilt or innocence of a defendant in a jury-tried case . . . deprive[s] the defendant of *the common sense and collective judgment of his peers, derived after weighing facts* and considering the credibility of witnesses, *which has been the hallmark of the jury tradition*." *Walker*, ¶ 19 (emphasis added, citations omitted).  That is precisely what occurred in this case and what this Court endorses.  The sole determinative factor as to James's guilt or innocence in this case was whether he was in actual physical control of his vehicle.  Rather than the jury reaching a decision based on its common sense and collective judgment after weighing the facts, as we held it should in *Sommers*, Breiland was allowed to testify to the ultimate conclusion of that determinative factor, contrary to our holding in *Walker*, ¶ 19.

¶40    The Court's attempt to mitigate the implications of its holding by stating that this testimony is admissible "[b]ased on how the questions to Breiland were presented," Opinion, ¶ 21, is unconvincing in light of how the questions to Breiland were actually presented at trial.  The last thing the jury heard from Breiland during the State's case-in-chief was his testimony on re-direct examination that James was in actual physical control of the vehicle—effectively testimony that James was guilty.  Immediately after offering this testimony, Breiland's testimony was concluded.  James was not given the opportunity to cross-examine Breiland as to his ostensibly "lay opinion," based on his training and experience, that James was in actual physical control of his vehicle.  This adds yet another way for parties to side-step the safeguards surrounding expert testimony.  *See Reese v. Stanton*, 2015 MT 293, ¶ 21, 381 Mont. 241, 358 P.3d 208 (explaining that

cross-examination of an opposing expert is "the shield to guard against unwarranted opinions," and is "essential" to the "discovery of truth.") (citation omitted).

¶41 The Court suggests that defense counsel's cross-examination of Breiland "opened the door for clarification about what factors constitute 'actual physical control' under *Sommers*," because "the defense muddled what factors the jury should consider in its deliberations." Opinion, ¶ 17. Aside from the fact that using a witness as a conduit for instructing the jury that an essential element of a crime has been satisfied is not the remedy for a purported misstatement of the law by counsel on cross-examination,[3] the Court again fails to appreciate the distinction between testimony as to the factors *observed*, which is entirely appropriate under *Sommers*, as opposed to testimony that the sole element of the crime that was in dispute—"the determinative factor as to [James's] guilt or innocence"— was satisfied, which is proscribed by *Walker*.

¶42 More to this point, this justification rings hollow given that the Court's suggestion that as long as the jury is instructed that it is still up to them to decide what weight to give to each of the *Sommers* factors, it is entirely proper for the arresting officer to also weigh the factors and tell the jury what conclusion to reach from those factors. Opinion, ¶ 20. By that rationale, an arresting officer, cloaked in the authority of his position and relying on his "training and experience" can offer purportedly lay testimony that a defendant is

_____

[3] Jury Instruction No. 3 read in relevant part, "It is [the court's] duty to instruct the jury on the law that applies to this case, and it is your duty as jurors to follow the law as I shall state it to you. . . . You should take the law in this case from my instructions alone."

23

guilty, so long as the jury is instructed that the ultimate decision as to guilt or innocence is still their job.

¶43　　The Court relies on unsupported precedent which directly contravenes the plain language of Rules 701 and 702 and provides an untenable standard as to what constitutes lay versus expert testimony that our trial courts are left to grapple with.  The consequences of the Court's ad hoc approach to the Rules of Evidence, and the disregard of precedent regarding the role and province of the jury will extend far beyond the resolution of this case.  As it pertains to this case, the irony is that had the jury been allowed to perform its duty in accordance with our precedent, I have little doubt that it would have weighed the *Sommers* factors on its own and would have found James guilty of DUI.  It is a shame the Court does not trust the jury to exercise its own judgment.  And a new hallmark of the jury tradition is born.

/S/ JAMES JEREMIAH SHEA

Justices Ingrid Gustafson and Laurie McKinnon join in the dissenting Opinion of Justice Shea.

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON